**Spencer T. Malysiak**
State Bar #084654
**SPENCER T. MALYSIAK LAW CORPORATION**
3500 Douglas Blvd, Suite 200
Roseville, CA  95661
Telephone:     (916) 788-1020
Facsimile:      (916) 788-0404

**William P. Roscoe**
State Bar #049733
815 University Avenue
Sacramento, CA  95825-6724
Telephone:     (916) 920-1800
Facsimile:      (916) 920-1807

Attorney for Plaintiff
HARLEY DELANO

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARLEY DELANO, <br><br> Plaintiff, <br><br> vs. <br><br> UNIFIED GROCERS, INC., aka Unified Western Grocers, a California corporation; SUPERVALU, INC., a Delaware corporation; <br><br> Defendants, | ) Case No: _____ <br> ) <br> ) **COMPLAINT FOR:** <br> ) <br> ) **1) Violations of 29 U.S.C. §1132(a)(1)(B) – Wrongful Denial of ERISA Benefits,** <br> ) <br> ) **2) Violations of 29 U.S.C. §1132(a)(3) – Equitable Relief for Breach of Fiduciary Duty by ERISA Fiduciary,** <br> ) <br> ) **3) Financial Elder Abuse under Cal. Wel. & Inst. Code §15610,** *et seq.* <br> ) <br> ) <br> ) **JURY TRIAL DEMANDED** |

Comes now the Plaintiff HARLEY DELANO ("Plaintiff") who alleges as follows:

## Parties

1.     Defendant UNIFIED GROCERS, INC. ("UGI") is a California corporation with its headquarters currently in Eden Prairie, Minnesota and its principal place of business in Los

---

Angeles County, California.   From December 20, 2001 to June 23, 2017, UGI conducted business in Sacramento County, California.   On February 12, 2008, UGI filed Amended and Restated Articles of Incorporation in which it changed its name from Unified Western Growers, Inc. to Unified Grocers, Inc.  Prior to that date, UGI was operating under the corporate name of Unified Western Grocers, Inc., and references to UGI shall also be deemed to refer to Unified Western Grocers, Inc. in this Complaint.

2.      At all relevant times mentioned herein, Plaintiff HARLEY DELANO resides in El Dorado County, California.

3.      Defendant SUPERVALU, INC. ("SI") is a Delaware corporation with its principal place of business in Minneapolis, Minnesota.  On or about June 23, 2017, SI acquired UGI as a merger pursuant to and in accordance with the provisions of the General Corporation Law of the State of California.  Plaintiff is informed and believes, and based thereon alleges, that SI acquired UGI in a reverse statutory merger in which UGI remained the surviving corporation. Plaintiff is further informed and believes, and based thereon alleges, that UGI is now, and has been since on or about June 23, 2017 ("merger date"), the wholly owned subsidiary corporation of SI. Since the merger date, UGI has continued to operate UGI's business in Sacramento County, California.

4.      Plaintiff is informed and believes, and based thereon alleges, that as a wholly owned subsidiary, UGI's business decisions are controlled by SI and its governing bodies. Plaintiff is informed and believes, and based thereon alleges, that from and after the merger date, each of the Defendants was the agent of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of the other Defendants.

/ / /

/ / /

**Jurisdiction and Venue**

5.      This Court has subject matter jurisdiction of this action as a complaint pursuant to 29 U.S.C. §§1132(e) (1), and 1367(a).  This Court has personal jurisdiction over all Defendants because they are all residents of the United States and ERISA provides for nation-wide service of process pursuant to 29 U.S.C. §1132(e)(2).  Venue is proper under 29 U.S.C. §1132(e)(2), because the ERISA plan discussed herein is administered within this district, some or all of the fiduciary breaches for which relief is sought occurred, and one or more Defendants reside or may be found, in this district, and is proper under 28 U.S.C. §§1391(b)(1) and (2), and (c)(2) since SI and UGI are subject to the Court's personal jurisdiction in this District as a result of their business contacts with this District, and substantially all of the events upon which the claims are based occurred in this District.

**GENERAL FACTS**

6.      Plaintiff was employed by UGI from February, 2000 until on or about January 2, 2002.  In the fall of 2001, Plaintiff and UGI discussed having Plaintiff retire early from UGI. During those discussions, UGI, through Mr. Alfred Plamann, the Unified Grocers, Inc.'s CEO agreed to a severance package for Plaintiff which included UGI maintaining the Policy until Plaintiff's death and in return Plaintiff would retire from his position, thus saving UGI from continuing to pay his salary under the earn out provisions.  This agreement established the UGI Plan uniquely for Plaintiff's benefit.  Specifically, Mr. Plamann confirmed and agreed that UGI would pay the Policy premiums for Plaintiff's benefit on the condition that the Policy would be reduced to 1 ½ times Plaintiff's final earnings on the date of his retirement.  UGI would also waive any service requirements that would otherwise be necessary for this benefit to vest. Plaintiff agreed to these terms, relying on the promise of a company paid Policy for the rest of his life when he gave up his right to the remaining salary.

7.   On or about December 20, 2001, Plaintiff and UGI entered into an agreement in writing memorializing the discussion that states Plaintiff would be permitted to retire on January 2, 2002 instead of his scheduled retirement date in September, 2002; that in exchange for retiring early and his loss of salary for 2002, UGI agreed to provide the following retiree benefits to Plaintiff:

A)   A Retiree Medical Coverage from and after January 2, 2002;

B)   Executive Life Insurance coverage equal to 1 ½ times the Plaintiff's final earnings from and after January 2, 2002; and

C)   Executive Salary Protection Plan ii that provided a supplemental pension benefit for officers with at least three years of service.

8.   A true and correct copy of the December 20, 2001 written agreement between Plaintiff and UGI is attached hereto as **Exhibit A** and referred to herein as the "Delano Retirement Plan".

9.   The Delano Retirement Plan states that "[t]his letter comprises the entire agreement and supersedes any prior conditions of employment . . ."

10.   Plaintiff contends that at all relevant times, the Delano Retirement Plan is an employee benefit plan within the meaning of 29 U.S.C. §§1002(2)(A) and (3), and therefore is governed by the Employee Retirement Employee Retirement Income Security Act of 1974 ("ERISA"), codified in part at 29 U.S.C. ch. 18). The Delano Retirement Plan was established to provide life insurance benefits to Plaintiff after retirement, and is thus an ERISA Plan.

11.   From on or about January 2, 2002 through the merger date, UGI honored its agreement to Plaintiff and maintained a universal life insurance policy on Plaintiff's life with Voya Services Company (previously Security Life of Denver) policy number 1562962 (the "Policy"), which allowed Plaintiff the rights to name a beneficiary and decide methods of settling claims.

12.    The Delano Retirement Plan explicitly states that UGI would "make the retiree life insurance available to you on January 2, 2002." UGI committed to provide company paid life insurance coverage to Plaintiff until the date of his death. Plaintiff gave consideration for UGI's promise by agreeing to relinquish his salary rights for the year 2002 in exchange for the benefits stated in the Delano Retirement Plan.

13.    UGI made all of the decisions as to the type of life insurance policy to obtain to provide these benefits, as well as structuring the premium payments. UGI elected to use a split-dollar life insurance policy with the result that a portion of the premiums paid each year were includable in Plaintiff's income for income tax purposes. Plaintiff would receive a tax form from UGI during these years that listed the amount of such income as compensation, and reported such income on his income tax returns. From January 2, 2002 through approximately December 31, 2017, UGI provided the benefit of the life insurance policy to Plaintiff.

14.    As a result of a merger, SI became the successor-in-interest to the original Delano Retirement Plan on or about June 23, 2017. From and after June 23, 2017, SI acted as the administrator of the Delano Retirement Plan together with UGI, and SI and UGI were and are each a fiduciary of the Delano Retirement Plan. SI was also a fiduciary of the Delano Retirement Plan within the meaning of 29 U.S.C. §1002(21)(A) because it exercised discretionary authority or control over management of the Delano Retirement Plan and the management or disposition of Delano Retirement Plan assets and/or had discretionary authority to appoint and monitor Delano Retirement Plan fiduciaries who had control over management or disposition of Delano Retirement Plan assets. SI exercised such authority and control for participants located in the Sacramento Region, California, including Plaintiff.

15.    Plaintiff and his wife relied on the Delano Retirement Plan for health care insurance coverage, and the death benefit under the Voya life insurance policy to provide a source of funds for Plaintiff's wife.

16.     On or about October 20, 2017, SI sent a letter to Plaintiff stating that it would be terminating Plaintiff's life insurance benefit at the end of the 2017 year, by SI terminating Plaintiff's Life Executive Insurance coverage.  In this letter, SI acknowledged that the Executive Life Insurance coverage provided a death benefit of $287,135 to Plaintiff through the Voya life insurance policy number 1562962 (the "Policy").

17.     The October 20, 2017 letter gave Plaintiff the option of purchasing the Policy and assuming its continuing obligations by paying to UGI or SI the Policy's cash surrender value and then assuming the obligations under the Policy, including continuing to pay the premiums.  If Plaintiff decided against assuming the Policy obligations, then UGI or SI would cancel the Policy and receive the cash surrender value.

18.     However, because UGI elected to finance the premium for the Policy through a split-dollar plan arrangement rather than purchasing a fully paid-up policy on or about January 2, 2002, the premium for the Policy increased over the years.

19.     Further, when UGI obtained the Policy, there was a premium schedule.  The initial scheduled premium was to be approximately $24,499.70 per annum.  However, UGI failed to pay the scheduled premium each year, and in certain years, failed to make any premium payment at all.  As a result of UGI's failure to pay the scheduled premiums, Plaintiff is informed and believes, and thereon alleges, that the annual premium for the Policy increased, with the result that if Plaintiff assumed the obligations of the Policy, the required premium payments would exceed the scheduled premium payments when the Policy was first obtained.  Given the fact that Plaintiff and his wife subsist on a limited income, which was known to SI, he could not afford to pay this cash surrender value and the monthly premiums of the Policy.  Instead, Plaintiff relied on UGI's representations that the Policy would be company paid as part of his severance package with UGI.

20.     Then, on or about November 1, 2017, SI sent a second letter to Plaintiff stating that all of his retiree benefits under the Delano Retirement Plan will be unilaterally terminated by SI and UGI effective as of December 31, 2017.

21.     On November 20, 2017, Plaintiff, through his counsel, sent a letter to SI informing SI with regard to the Delano Retirement Plan. In this letter, Plaintiff alleged as he does in the present Complaint – namely, that Plaintiff and UGI entered into a severance agreement memorialized in the December 20, 2001 letter, whereby UGI agreed to maintain the Policy until Plaintiff's death, and as consideration Plaintiff agreed to retire early relieving UGI of salary payments it otherwise would have been required to make through September, 2002. This letter sought SI's confirmation that it would take no action to terminate or surrender the Policy, and that SI would continue to pay the premiums of the Policy until a further investigation could be conducted. Throughout this letter, Plaintiff informed SI that the Policy was related to Delano Retirement Plan based on the December 20, 2001 letter from UGI, that it was separate and independent from any other UGI executive retirement plan, and that Plaintiff had given independent consideration in exchange for receiving the benefits of the Delano Retirement Plan. This letter explained that if SI or UGI terminated the Delano Retirement Plan, then the Delano Retirement Plan would be illusory and Plaintiff would have received no benefits in exchange for foregoing his salary for the year 2002. A true and correct copy of this letter is attached hereto as **Exhibit B**.

22.     This November 20, 2017 letter also requested that SI deliver certain documents related to Plaintiff's employment and the Delano Retirement Plan. While some of the documents have been produced, other documents have not been produced in violation of 29 U.S.C §1132(c).

23.     In a letter dated December 12, 2017, SI responded to Plaintiff's November, 2017 letters by treating them as a claim under ERISA. With respect to the Policy, SI rejected Plaintiff's "claim" by stating that SI and UGI considered the Delano Retirement Plan as part of

UGI's other ERISA plans, despite the clear language in the Delano Retirement Plan that is comprised the only agreement between Plaintiff and UGI.   In this letter, SI stated since SI was treating this letter as a determination of Plaintiff's benefits under the Delano Retirement Plan for ERISA benefits, Plaintiff could appeal SI's decision within 60 days.

24.    On February 6, 2018, Plaintiff through his counsel requested an extension of time until March 15, 2018 to file an appeal of SI's determination because of the problems of obtaining the documents necessary to determine whether Mr. Delano has a claim under ERISA.  SI never responded to this letter.

25.    On February 9, 2018, Plaintiff appealed SI's rejection of Plaintiff's claim. Plaintiff once again asserted his claim the Delano Retirement Plan and the representations that had been made to him by UGI that the Policy would be company paid, and that he would continue to have the right to designate the beneficiary and method of settlement of such Policy. Plaintiff also emphasized that the letter contained language that this was the entire agreement between the parties as to Plaintiff's severance package, and it constituted a separate benefit plan under ERISA.  A true and correct copy of this letter is attached hereto as **Exhibit C**.

26.    Because SI never responded to Plaintiff's February 6, 2018 letter, in the February 9, 2018 letter, Plaintiff requested that SI and UGI provide to Plaintiff the following documents:

> All documents relied upon by SuperValu in support of its position that it can unilaterally terminate the life insurance policy on Mr. Delano's life under the ERISA Plan set forth in the 2001 Letter.

> All documents that SuperValu believes set forth a procedure under ERISA for contesting or appealing its decision to terminate the life insurance policy on Mr. Delano's life under the ERISA Plan set forth in the 2001 Letter.

> The application for Mr. Delano's life insurance policy, including the agent's report.

> The underwriting file.

> Any sales material used by the agent furnished to the carrier.

The original 2001 signed policy illustration.

The policy anniversary statements and all correspondence including but not limited to billing/premium statements, updates, policy changes, etc.

Any sales material used by the agent furnished to the carrier.

Any policy illustrations of what the single premium would have been in 2002 to fully pay up the life insurance at that time?

Confirm that the insurance policy is still in force.

Any other procedure with which Mr. Delano must comply to contest or appeal SuperValu's decision to terminate the life insurance policy on Mr. Delano's life under the ERISA Plan set forth in the 2001 Letter.

Any additional information which SuperValu believes is necessary to properly decide these issues.

27.      Neither SI nor UGI provided any documents requested in violation of 29 U.S.C §1132(c).

28.      On April 9, 2018, SI responded to Plaintiff's appeal of the denial of his claim for benefits and demand that SI continue making premium payments on the Policy by reiterating their prior stance that SI was entitled to unilaterally terminate Plaintiff's benefits.  As a result, Plaintiff has exhausted all of his administrative remedies related to the UGI Plan and/or SI Plan at the time he filed this Complaint.

29.      Plaintiff has also performed all acts that were and are required of him under the Delano Retirement Plan.

30.      Plaintiff is informed and believes, and thereupon alleges, that SI and UGI terminated the Delano Retirement Plan and let the Policy lapse on or about December 31, 2017, pursuant to the statements in their October 20, 2017, letter.

31.      Plaintiff is now age 81, his wife is age 81.  Plaintiff is unable at this time to procure comparable life insurance coverage to that of the Policy for comparable premiums due to

his age and health.  Moreover, Plaintiff lives on a reduced income and knew he would live on a reduced income when he agreed to retire early in 2001 when he entered into the Delano Retirement Plan in December 2001.  By terminating the Delano Retirement Plan and letting the Policy lapse, SI and UGI have unilaterally taken all the benefits Plaintiff was entitled to under the severance package.

## FIRST CAUSE OF ACTION

### (29 U.S.C. §1132(a)(1)(B) – Wrongful Denial of ERISA Benefits against All Defendants)

32.     Paragraphs 1 through 30 of this Complaint are incorporated herein.

33.     29 U.S.C. §1132(a)(1)(B) provides, "[a] civil action may be brought – (1) by a participant or beneficiary – (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . ."

34.     Under the terms of the Delano Retirement Plan, Plaintiff is entitled to: (1) UGI obtaining and maintaining the Policy until Plaintiff's death; (2) death benefits totaling 1½ Plaintiff's pay as of his retirement to be paid to a beneficiary of Plaintiff's choice, which amount is equal to $276,135; (3) discretion as to the method of settling payment of such death benefits.

35.     Through its letter dated December 12, 2017, SI and UGI rejected Plaintiff's claim and demand for them to maintain his rights in the Policy as required under the Delano Retirement Plan, and wrongfully surrendered the Policy in violation of Plaintiff's rights under ERISA in the Delano Retirement Plan.

36.     Under 29 U.S.C. §1132(a)(1)(B), Plaintiff is entitled to recovery of the benefits due to him, enforcement of his rights, as well as a clarification of his future benefits under the terms of the Delano Retirement Plan.  In this instance, the appropriate remedy will include restitution in the form of reinstating the Policy or a substantially similar life insurance policy

1   under the terms of the Delano Retirement Plan and ordering SI and/or UGI to pay all premium

2   payments on such policy until Plaintiff's death, as well as such other equitable relief that the

3   Court deems is appropriate.

4   ## SECOND CAUSE OF ACTION

5   **(29 U.S.C. §1132(a)(2) and (3) – Breach of Fiduciary Duty by ERISA Fiduciary against SI,**

6   **UGI and DOES 1 through 10)**

7   37.    Paragraphs 1 through 35 of this Complaint are incorporated herein.

8   38.    During all relevant periods up to June 23, 2017, SI and UGI were named

9   fiduciaries of the Delano Retirement Plan, respectively, pursuant to 29 U.S.C. §1102(a)(1), or *de*

10  *facto* fiduciaries within the meaning of 29 U.S.C. §1002(21)(A), or both.

11  39.    The scope of UGI's, and subsequently SI's, fiduciary duties under the Delano

12  Retirement Plan included maintaining the Policy by paying its required premiums for the benefit

13  of Plaintiff, as alleged above.

14  40.    On or about December 20, 2001, UGI breached its fiduciary duties to Plaintiff by

15  misrepresenting that UGI would pay all premiums owed under the Policy for Plaintiff's benefit

16  during his life.  UGI made such representations in order to induce Plaintiff to retire nine (9)

17  months early so that UGI could avoid paying his a salary during that period.  Plaintiff did not

18  discover, nor was he aware of facts which would allow a reasonable person to discover this

19  breach, until October 20, 2017 – the date on which SI informed him that they were going to

20  unilaterally terminate his benefits and surrender the Policy.  Prior to that date, UGI and/or SI had

21  not taken any overt actions to unilaterally terminate the Delano Retirement Plan or surrender the

22  Policy and UGI consistently made premium payments to maintain the Policy.

23  41.    On or about December 31, 2017, SI and/or UGI and their respective officers

24  further breached their fiduciary duties by wrongfully terminating the Delano Retirement Plan,

25  surrendering the Policy and cancelling all benefits in which Plaintiff is vested, including but not

1  limited to, Plaintiff's rights to designate beneficiaries and settlement methods under the Policy.
2  As these were terms with the Delano Retirement Plan, SI's and UGI's failure to adhere to such
3  terms was a breach of their duties and violated the terms of the Delano Retirement Plan under
4  ERISA, including 29 U.S.C. §1132(a)(3).

5      42.    Plaintiff informed SI and UGI that terminating the Delano Retirement Plan and
6  surrendering the Policy were breaches of their duties under the Delano Retirement Plan through
7  his letter dated November 1, 2017 and through conversations with SI's counsel in December
8  2017. Further, Plaintiff informed SI and UGI that any failure to pay premiums or denial of
9  Plaintiff's rights related to the Policy were violations of the Delano Retirement Plan through his
10  appeals letter dated February 9, 2018. As such, SI and UGI had knowledge that their conduct
11  was in breach of their fiduciary duties at the time they terminated the Delano Retirement Plan
12  and surrendered the Policy.

13      43.    Despite Plaintiff's warnings in November and December, 2017, SI and UGI
14  surrendered the Policy which had a death benefit at the time of surrender of at least $287,135.00.
15  By surrendering the Policy in violation of the Delano Retirement Plan, SI and UGI have
16  damaged Plaintiff in the full amount of the death benefit and other benefits to be maintained
17  under the Delano Retirement Plan.

18      44.    Pursuant ERISA, including 29 U.S.C. §1109, 1132(a) (2) and (3), SI and UGI are
19  liable to restore the losses to Plaintiff caused by their breaches of fiduciary duties for the Delano
20  Retirement Plan alleged in this Cause and to provide other equitable relief as appropriate,
21  including, but not limited to, restoration of the Policy or a comparable life insurance policy for
22  Plaintiff's benefit.

23  / / /
24  / / /
25  / / /

## THIRD CAUSE OF ACTION

### (Violation of Cal. Wel. & Inst. Code §15610, *et seq.* – Financial Elder Abuse against All Defendants)

45.    Paragraphs 1 through 43 of this Complaint are incorporated herein.

46.    This Court has supplemental jurisdiction over this State cause of action pursuant to 28 U.S.C.A. § 1367 since this claim is related to the ERISA claims in this Complaint in which this Court has original jurisdiction that this claim forms part of the same case or controversy under Article III of the United States Constitution.

47.    The Delano Retirement Plan and the Policy provides for and confers upon Plaintiff substantial and valuable property rights, which include, but are not limited to, all benefits accruing to Plaintiff under the policy, the death proceeds and the right to designate beneficiaries thereof in a sum of no less than $274,000.

48.    By terminating Plaintiff's rights under the Delano Retirement Plan, including, but not limited to the Policy and other benefits to which Plaintiff is entitled, Defendants have taken, secreted, appropriated, obtained and retained the personal property of Plaintiff for a wrongful use or with intent to defraud, or both.

49.    On the date that UGI and SI committed such acts set forth in this Complaint, Plaintiff was over the age of 65 years and was residing within the State of California.

50.    Defendants have or assisted in taking, secreting, appropriating, obtaining and retaining Plaintiffs aforesaid property and deprived Plaintiff thereof for a wrongful use or with intent to defraud in the Defendants knew or should have known that such conduct is likely to be harmful to Plaintiff in that such actions deprived Plaintiffs of his property and property rights, whether by means of any agreement or breach thereof, or other means of taking same.

51.    Defendants intentionally assisted in and have themselves intentionally taken, secreted, appropriated, obtained and retained Plaintiff's property and property rights with intent

to defraud and with intent to effect wrongful purposes as shown by their conduct, including, but not limited to:

(i)     Hiding and concealing that Defendants did not pay all the premiums to keep in force and maintain the Policy in effect under the insurance funding Delano Retirement Plan which Defendants, themselves, chose as the vehicle to pay the necessary premiums for the policy;

(ii)    Avoiding and concealing Defendant's existing and future obligations to fund and pay the necessary premiums to keep and maintain the policy in force;

(iii)   Obtaining for their sole benefit the accumulated cash value of the Policy at the time they terminated the Plan and Policy and by intentionally choosing a method of funding the Delano Retirement Plan, namely the split-dollar plan arrangement alleged in Paragraph 17 of this Complaint, which was misleading to Plaintiff as it purported to pay premiums necessary to maintain and keep the Policy in force but failed to do so; and

(iv)    Failing and refusing to comply with and respond to Plaintiff's requests for information as alleged in Paragraphs  21, 23, 25, 26 of this Complaint, and

Based on these and other facts, Defendants knew or should have known that their wrongful and intentional conduct would be harmful to Plaintiff in that it would deprive Plaintiff of his property and property rights under the Delano Retirement Plan and Policy.

52.    The actions of Defendant in taking, secreting, appropriating, obtaining and retaining the property and property rights of Plaintiff, or Defendants assisting in doing so, has substantially and entirely caused harm to Plaintiff in that he has been deprived of his benefits, rights and property rights under the Delano Retirement Plan and the Policy.

53.    As such, Defendants' wrongful denial of Plaintiff's claim of rights under the Delano Retirement Plan, unilateral termination of the Delano Retirement Plan, and surrender of the Policy against Plaintiff's pleas to stop constitute a deprivation of Plaintiff's property and

1   rights to the Policy funds and to designate such funds to his chosen beneficiary, and therefore,

2   constitute financial elder abuse under California Welfare & Institutions Code §§15610.07(3) and

3   15610.30, and other California law.

4       54.    By and through his counsel, Plaintiff has made specific and repeated demands for

5   return and restoration of Plaintiff's rights and property in writing, but Defendants have utterly

6   and definitively refused to do so.  Plaintiff is therefore entitled additionally to all the remedies in

7   accordance with and as provided in California Welfare and Institutions Code §15657.5(a), (b),

8   (c), and (d), and Civil Code §3294.

9       55.    In performing the actions alleged herein, Defendants intentionally oppressed the

10  rights of Plaintiff and intentionally caused him injury as defined under California Civil Code

11  §3294(c).   Consequently, Defendants are guilty of malice and/or oppression in conscious

12  disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages in an

13  amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

14      56.    Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial

15  by jury of this cause of action.

16                          **JURY TRIAL DEMANDED**

17      57.    Under Rule 38 of the Federal Rules of Civil Procedure and the Constitution of the

18  United States, Plaintiff demands a trial by jury on all the issues so triable in this Complaint.

19                          **PRAYER FOR RELIEF**

20      **WHEREFORE**, Plaintiff prays for relief as follows:

21      **As to the First Cause of Action**:

22      1.    For restitution in the form of reinstatement of the Policy, or execution of a

23  comparable life insurance policy, in Plaintiff's favor together with all of his rights, title and

24  interest in such Policy under the Delano Retirement Plan, including, but not limited to, ordering

25  SI and UGI to pay premiums on such policy until Plaintiff's death;

2.    For costs of suit;

3.    For an award of reasonable attorneys' fees pursuant to 29 U.S.C. §1132(g); and

4.    For such other and further relief as the Court deems proper.

**As to the Second Cause of Action:**

5.    For a determination that SI and UGI have violated their fiduciary duties under the SI Plan and Delano Retirement Plan, respectively, by denying Plaintiff's benefits under the Delano Retirement Plan, and that the Court enjoin such practices;

6.    For restitution in the form of reinstatement of the Policy, or execution of a comparable life insurance policy, in Plaintiff's favor together with all of his rights, title and interest in such Policy under the Delano Retirement Plan, including, but not limited to, ordering SI and UGI to pay premiums on such policy until Plaintiff's death;

7.    For costs of suit;

8.    For an award of reasonable attorneys' fees pursuant to 29 U.S.C. §1132(g); and

9.    For such other and further relief as the Court deems proper

**As to the Third Cause of Action:**

10.    For damages in excess of $287,135.00, according to proof, representing the death benefits of which Plaintiff was wrongfully deprived in violation of California Welfare & Institutions Code §1561.30(a)(1) and (c);

11.    For prejudgment interest at the legal rate;

12.    For exemplary and punitive damages;

13.    For costs of suit incurred, including reasonable attorney's fees under Welfare & Institutions Code §15657.5;

14.    For such other and further relief as the Court deems proper.

Date: January 3, 2019

SPENCER T. MALYSIAK
Attorney for Plaintiff, HARLEY DELANO

EXHIBIT A

**UNIFIED**
UNIFIED WESTERN GROCERS, INC.

December 20, 2001

Mr. Harley Delano
2571 La Loma Lane
Greenwood, CA  95635

Dear Harley:

This confirms our conversation of this date regarding your retirement from Unified Western Grocers, Inc. with an effective retirement date of January 2, 2002.  Since you have elected to retire before your previously scheduled September 2002 retirement date you will not receive salary beyond January 2, 2002.  In return for this loss in salary, we are able to accelerate your eligibility for certain officer retiree benefits that were originally set forth in my letter to you dated July 20, 2001.

- Retiree Medical Coverage.  Officer retiree medical insurance is available to all officers when they have completed 7 years of service as an officer and are at least 55 years old.  This plan covers the former officer and spouse and in the event of the former officer's death, the surviving spouse will continue to receive medical insurance coverage for her lifetime or until remarried.  In your case, the Company will waive the requirement for 7 years of service and make this benefit available on January 2, 2002.

- Executive Life Insurance.  You are already enrolled in this plan that provides a company-paid life insurance benefit equal to 3 times your annual salary while you are an active employee.  As outlined in the plan document, this amount is reduced to 1½ times your final earnings when you retire from the Company with at least 5 years of service.  In your case, the Company will waive this requirement for 5 years of service and make the retiree life insurance available to you on January 2, 2002.

- Executive Salary Protection Plan II.  You are already enrolled in this plan that provides a supplemental pension benefit for officers with at least three years of service.  You will qualify for vested benefits under this plan on January 2, 2002, and will be credited with four (4) years of vested service as of that date.

The pay and benefits outlined above will be provided on your retirement date of January 2, 2002.  Of course, any payment due as a result of your service as an employee of Unified that has accrued as of January 2, 2002 will be issued as soon as practicable after January 2, 2002.  This letter comprises the entire agreement and supersedes any prior conditions of employment, including those outlined in my letter of July 20, 2001.

5200 Sheila Street • Commerce • California 90040 • Tel: (323) 264-5200
Mailing Address: P.O. Box 513396 • Los Angeles • CA 90051-1396

On behalf of everyone at Unified, thank you for you years of service to the Company.  If there are any questions regarding the above, or I can be of any assistance in implementing the above, please call me directly.

Sincerely,                                           Accepted and Agreed to:


Robert M. Ling, Jr.                    Harley Delano                    Date
Executive Vice President
General Counsel & Secretary

EXHIBIT B

# SPENCER T. MALYSIAK

### LAW CORPORATION

| Spencer T. Malysiak, JD, LLM (Tax) | 3500 Douglas Blvd. • Suite 200 | Erik P. Larson, JD |
|---|---|---|
| spencer@malysiaklaw.com | Roseville • CA • 95661 | erik@malysiaklaw.com |
| | Phone: (916) 788-1020 | |
| | Facsimile: (916) 788-0404 | |
| | | Richard Shoemaker-Moyle, JD |
| | | richard@malysiaklaw.com |

File Number:  5688.15

November 20, 2017

## SENT BY CERTIFIED MAIL

SuperValu, Inc.
Corporate Offices
P.O. Box 990
Minneapolis, MN  55440

ATTN: Jon R. Born, Senior Director, Benefits

Dear Mr. Born,

Our firm has been engaged by Mr. Harley Delano with respect to the letter that you sent to him dated November 1, 2017.  Your letter pertained to the Executive Life Insurance that was procured by Unified Western Grocers, Inc. for the benefit of Mr. Delano on or about December 20, 2001.

In your November 1, 2017 letter, which was a follow up to your October 20, 2017 letter, you state that SuperValu acquired Unified Western Grocers, Inc. ("Unified)  After the acquisition, SuperValu has made a determination to terminate the executive benefits, including the retiree medical coverage and Executive Life Insurance of Mr. Delano.

The purpose of this letter is to notify you that Mr. Delano separately negotiated a life insurance policy and a retiree medical coverage as part of his severance from the company.  I have enclosed a letter dated December 20, 2001 signed by Mr. List on behalf of Unified in which Mr. Delano contracted to take an early retirement, thereby foregoing his wages for the period of January 1, 2002 to September, 2002.  In exchange for his agreeing to retire on January 2, 2002, Unified Western Grocers, Inc. contracted to provide him with retiree medical coverage and a life insurance policy equal to three times his annual salary.

When Mr. Delano retired, it was his understanding and agreement with Unified Western Grocers, Inc. that he would receive the benefit of a life insurance policy with a death benefit equal to one and half times his average salary.  It was also his understanding that this policy would remain in force until he passed away as part of the consideration for his early retirement.  It was not his understanding that the promise by Unified Western Grocers, Inc. to procure and maintain a life insurance policy on his life and for his benefit was one that was illusory and could be terminated at any time prior to Mr. Delano's death.

11-20-17 Supervalu Ltr.Docx                              1

Jon R. Born                                                                November 20, 2017

Despite the contract between Unified and Mr. Delano, your letter states that SuperValu is terminating the program for all retirees, and that as one of the retirees, Mr. Delano has the option of either taking over the policy and paying the premiums to maintain the policy in force, or to surrender the policy and receive the minuscule cash surrender value of $3,083.00 dollars.

Our office is working with Mr. Delano to determine his legal rights to have the life insurance policy maintained for his benefit under the terms of the contract between he and Unified. From our preliminary investigation, it appears that Unified made a decision to pay the premiums on an annual basis rather than delivering to Mr. Delano a fully paid up policy on the date of his termination. We assume that Unified Western Grocers, Inc. did so for the purposes of obtaining a potential tax benefit. As evidence of this, as part Unified Western Grocers, Inc. decision to pay the premiums on an annual basis, it appears that the company entered into a split-dollar agreement with Mr. Delano as a means to finance the premium payments. In this regard, I notice that while the current death benefit is $479,509.00 dollars, the actual current death benefit that would be paid to Mr. Delano's beneficiaries would be $287,135.00 dollars. It appears that the difference between these two numbers is to be used to repay the company for the premiums that were paid on the policy as per the split-dollar agreement.

Because there was a split-dollar agreement involved, it also appears that the life insurance policy was not obtained as part of a Unified group-term insurance policy plan.

At this time, we would like your confirmation that you will take no action to terminate or surrender the life insurance policy on Mr. Delano's life, and that you will continue to pay the premiums to keep the policy in force pending the result of our investigation. If SuperValu does terminate the life insurance policy, then it may subject itself to potential civil claims for breach of contract, interference with perspective economic advantage, violation of the implied covenant of good faith and fair dealing in the contract between Mr. Delano and Unified. Mr. Delano would like to resolve this matter without resorting to legal action; however, he has authorized our office to protect his interests.

As part of our investigation, please send us copies of the following documents;

1.      The acquisition agreement between SuperValu and Unified, and in particular the provisions that deal with the assumption of all contracts, commitments, obligations, and liabilities of Unified by SuperValu;
2.      Copy of the split-dollar agreement between Mr. Delano and Unified;
3.      A copy of the Unified Grocers executive benefits plans; and
4.      Mr. Delano's complete personal file.

Pending our investigation and the resolution of any potential dispute regarding the life insurance policy for Mr. Delano, I advise you that under the law, all parties involved in actual or threatened lawsuit must take active steps to preserve all documents and electronically stored information ("ESI") that is potentially relevant to that dispute. This applies to all people and entities who use computers in their daily course of business, regardless of size, location, or industry. As a result, the manner in which electronic information is collected, stored, managed, retained and retrieved, particularly within the context of litigation, is very important. The failure to properly preserve potentially relevant ESI could lead to the imposition of substantial monetary sanctions or, even worse, evidentiary or preclusions sanction, which could prevent you from

Jon R. Born                                                                                    November 20, 2017

presenting evidence or making arguments necessary to prevail at trial, or even result in a judgment against you.

Presently, it is not Mr. Delano's desire to file suit on this matter, but instead to work together to give him the benefit of his bargain when he took early retirement. While we are hopeful that this matter will be resolved amicably, please let this letter serve as our demand for production and preservation of any and all potentially relevant ESI.

ESI includes e-mails, instant messages and other electronic communications, word processed documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, network access information and even voicemails. Due to its electronic format, much ESI is easily deleted, modified or corrupted. Even merely opening and reviewing an electronic file may alter its "metadata" (i.e., data about the file's data, such as creation or last access dates), which may be relevant to the dispute.

ESI would be found on various computer platforms, whether they are in SuperValu, Inc.'s possession or in the possession of a third party under its control (e.g., employees or outside vendors), such as computer networks, systems (whether in use or outdated), servers, databases, archives, backup or disaster recovery systems, tapes, disks, drives, cartridges and other storage media, laptops, personal computers, personal digital assistants, handheld wireless devices, mobile telephones, paging devices, and audio systems (including voicemail). This would include any ESI that is in the possession of, or under the control of Unified. A more detailed description of the types and locations of ESI that should be preserved is set forth below.

SuperValu, Inc. is required to preserve ESI that are relevant to Mr. Delano's agreement to take early retirement, his participation in the executive benefits program, the obtaining, issuance, and maintaining of all insurance policies on Mr. Delano's life, including riders, addendums, and extensions, and any other information that it is likely to lead to the discovery of admissible evidence pertaining to this dispute. **The duty to preserve ESI arises the moment litigation is reasonably anticipated, which may be before a lawsuit is filed or served (or a subpoena is received)**. The duty to preserve requires that you take reasonable steps to preserve ESI until the final resolution of the litigation.

SuperValu, Inc. must preserve all digital or analog electronic files containing or compromising potentially relevant ESI in their original electronic format, regardless of whether hard copies of the information exist. This includes preserving active data (i.e., data immediately and easily accessible on your systems today), archived data (i.e., data that has been deleted from a computer hard drive but is recoverable through computer forensic techniques), and legacy data (i.e., data created with outdated or obsolete hardware or software).

Potentially relevant ESI to be preserved may be in the following forms, among others:
- E-mails (sent and received), in electronic format, regardless of whether hard copies exist, as well as any relevant metadata, including message contents, header information and e-mail system logs.
- Word-processed files, including drafts and revisions.
- Spreadsheets, including drafts and revisions.
- Databases.

Jon R. Born                                                                                 November 20, 2017

- Presentation data or slide shows produced by presentation software (such as Microsoft PowerPoint).
- Electronic copies of boards or proposals.
- Graphs, charts and other data produced by project management software (such as Microsoft Project)
- Animations, images, audio, video and audiovisual recordings, MP3 files, and voicemail files.
- Data generate by calendaring, task management and personal information management (PIM) software (such as Microsoft Outlook or Lotus Notes).
- Data created with the use of personal data assistants (PDAs) or smart devices, such as Blackberry, iOS (iPhone and iPad), Windows OC, and Palm OS devices.
- Data created with the use of document management software.
- Data created with the use of paper and electronic mail logging and routing software.
- Records of Internet and Web-browser generated files, in electronic format, regardless of whether hard copies of the information exist (including history files, caches and "cookies" files stored on backup media or generated by employees).

SuperValu, Inc. must preserve all electronic systems used to create, process, maintain or store potentially relevant ESI. This includes computer servers, network devices, stand-alone personal computers, hard drives, laptops, PDAs, and other electronic processing devices. You must retain any hardware no longer in service but used during the time period relevant to the particular dispute if it contains relevant ESI.

In order to show preservation compliance, it may be necessary to maintain a log documenting all modifications to any electronic data storage device or any electronic data processing system that may contain potentially relevant ESI. The log should include changes and deletions by supervisors, employees, contractors, vendors, or any other third parties.

SuperValu, Inc. may preserve all supporting information relating to the electronic system, or any media containing potentially relevant ESI, including passwords, decryption procedures (and accompanying software), network access codes, decompression or reconstruction software, user ID names, manuals, tutorials, written instructions, codebooks, keys, data dictionaries, diagrams, handbooks or other supporting documents that aid in reading or interpreting database, media, e-mail, hardware, software, or activity log information. SuperValu, Inc. must also preserve all hard copy or electronic logs documenting computer use which may be considered relevant to Mr. Delano's life insurance policy. In addition, SuperValu, Inc. must preserve all documents reflecting upgrades or changes to any systems, containing potentially relevant ESI.

It is important to keep in mind that potentially relevant evidence in hard copy form must also be preserved until this dispute is resolved. Any routine document destruction programs (e.g. shredding) should be discontinued, and all hard copy files that may be relevant whether stored onsite or offsite, should be secured.

SuperValu, Inc. must not modify or delete relevant ESI.

Jon R. Born                                                                    November 20, 2017

        Please forward a copy of this letter to all individuals and entities responsible for any of
the items referred to in this letter.

        Please feel free to contact me or have your legal counsel contact me to discuss this matter
and a possible early resolution of this dispute.  It may yet be possible to avoid expensive and
disruptive litigation with Mr. Delano.  I look forward to working with you and SuperValu, Inc. to
resolve any dispute and to protect Mr. Delano's interest in the life insurance.


                                        Very truly yours,


                                        SPENCER T. MALYSIAK

STM/ra

Enclosure:       Copy of December 20, 2001 Letter

cc:      Harley Delano
         Steve Bertino
         William P. Roscoe, III, Esq.

**UNIFIED**
UNIFIED WESTERN GROCERS, INC.

December 20, 2001

Mr. Harley Delano
2571 La Loma Lane
Greenwood, CA  95635

Dear Harley:

This confirms our conversation of this date regarding your retirement from Unified Western Grocers, Inc. with an effective retirement date of January 2, 2002. Since you have elected to retire before your previously scheduled September 2002 retirement date you will not receive salary beyond January 2, 2002. In return for this loss in salary, we are able to accelerate your eligibility for certain officer retiree benefits that were originally set forth in my letter to you dated July 20, 2001.

- <u>Retiree Medical Coverage</u>. Officer retiree medical insurance is available to all officers when they have completed 7 years of service as an officer and are at least 55 years old. This plan covers the former officer and spouse and in the event of the former officer's death, the surviving spouse will continue to receive medical insurance coverage for her lifetime or until remarried. In your case, the Company will waive the requirement for 7 years of service and make this benefit available on January 2, 2002.

- <u>Executive Life Insurance</u>. You are already enrolled in this plan that provides a company-paid life insurance benefit equal to 3 times your annual salary while you are an active employee. As outlined in the plan document, this amount is reduced to 1½ times your final earnings when you retire from the Company with at least 5 years of service. In your case, the Company will waive this requirement for 5 years of service and make the retiree life insurance available to you on January 2, 2002.

- <u>Executive Salary Protection Plan II</u>. You are already enrolled in this plan that provides a supplemental pension benefit for officers with at least three years of service. You will qualify for vested benefits under this plan on January 2, 2002, and will be credited with four (4) years of vested service as of that date.

The pay and benefits outlined above will be provided on your retirement date of January 2, 2002. Of course, any payment due as a result of your service as an employee of Unified that has accrued as of January 2, 2002 will be issued as soon as practicable after January 2, 2002. This letter comprises the entire agreement and supersedes any prior conditions of employment, including those outlined in my letter of July 20, 2001.

Harley Delano
December 20, 2001
Page 2


On behalf of everyone at Unified, thank you for you years of service to the Company.  If there are any questions regarding the above, or I can be of any assistance in implementing the above, please call me directly.

Sincerely,                                        Accepted and Agreed to:

Robert M. Ling, Jr.                               Harley Delano                     Date
Executive Vice President
General Counsel & Secretary

**EXHIBIT C**

# SPENCER T. MALYSIAK

### L A W   C O R P O R A T I O N

Spencer T. Malysiak, JD, LLM (Tax)
spencer@malysiaklaw.com

3500 Douglas Blvd. • Suite 200
Roseville • CA • 95661
Phone: (916) 788-1020
Facsimile: (916) 788-0404

Erik P. Larson, JD
erik@malysiaklaw.com

Richard Shoemaker-Moyle, JD
richard@malysiaklaw.com

File Number: 5688.15

February 9, 2018



**Sent via fax (952) 828-5120**

William R. Seehafer
Vice President, Labor Relations
SuperValu, Inc.
Corporate Offices
P.O. Box 990
Minneapolis, MN  55440

     Re:  Harley Delano

Dear Mr. Seehafer,

     This letter is an appeal from the decision of SuperValu, Inc.'s ("SuperValu") decision to deny Mr. Harley Delano the life insurance policy and benefits to which he is entitled under the terms of the December 20, 2001 letter, which was previously sent to SuperValu.

     As a result of SuperValu's actions in wrongfully terminating Mr. Delano's life insurance policy, Mr. Delano contends that, under ERISA, he has the following claims when his benefits were terminated: (1) a claim for benefits under the terms of the plan pursuant to 29 U.S.C. Sec. 1132(a) (1) (B); and (2) a claim for breach of fiduciary duty pursuant to 29 U.S.C. Sec. 1132(a) (3).  Therefore, Mr. Delano appeals the decision as follows:

     SuperValu has stated the reasons for the denial of benefits in its letter addressed to me dated December 12, 2017 ("Denial Letter").  In denying Mr. Delano's claims, Supervalu has asserted the following:

     SuperValu is relying upon the language in Article 6(a) (i) of the Split Dollar Agreement dated December 27, 2000 signed by Unified Western Grocer, Inc. and Mr. Delano.  SuperValu is relying upon the language in that Article that permits the Split Dollar Agreement to be terminated upon delivery of written notice.

     SuperValu's reliance on the Split Dollar Agreement, and Article 6(a)(i), is misplaced. Mr. Delano is seeking the benefits provided to him under the ERISA plan stated in the letter

ERISA Appeal Ltr            1

agreement between Mr. Delano and Unified Western Grocers, Inc. ("UWG") dated December 20, 2001 ("2001 Letter').

      The 2001 Letter states that Mr. Delano will be provided with a "company paid life insurance benefit" equal to 1 ½ times his final earnings.

      The 2001 Letter also states that "This letter comprises the entire agreement and supersedes any prior conditions of employment . . . ."  Therefore, this letter is not part of the Executive Life Insurance Plan, but a completely new ERISA benefit awarded to Mr. Delano for his election to take early retirement and forego his last 9 months of compensation.

      The 2001 Letter does not state that it is incorporating the Executive Life Insurance Plan, nor does it state that the 2001 Letter is an amendment to such Plan.  Instead, the 2001 Letter unambiguously states that Mr. Delano is to be provided with a company paid life insurance benefit equal to 1 ½ times his final earnings.

      The conclusion that the 2001 Letter is a completely separate ERISA welfare benefit plan is supported by the decision in the case of *Deboard v. Sunshine Min. and Refining Co,* 208 F.3d 1228 (10th Cir., 2000).  In the *Deboard* case, the employer sent a letter to certain employees that described the benefit being provided to those employees, which stated that the policy would be "fully paid for at Woods Petroleum Corporation's expense until the time of your death".  Just like Mr. Delano, the employees in *Deboard* were entitled to participate in this benefit if they agreed to take an early retirement.

      The holding of the *Deboard* court was that the letter sent to the employees constituted an entirely new ERISA welfare benefit plan.  In arriving at its holding, the court noted the following:

> [T]he October 3 letters satisfied the minimum requirements for establishing an ERISA plan. Not only did the letters specify a funding mechanism for the plan (i.e., that Woods [the employer] would pay the health insurance premiums), they also allocated ongoing operational and administrative responsibilities to the employer. See Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 12, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). In particular, Woods was required under the plan to regularly pay the health, dental, and life insurance premiums for plaintiffs, and was further required to allocate company resources to do so. Thus, in the words of the Supreme Court, the plan placed "periodic demands" on Woods' assets, "creat[ing] a need for financial coordination and control." *Id.* . . .  Aside from establishing an administrative scheme, the documents sufficiently described the intended benefits (lifetime health insurance benefits, etc.), the intended class of beneficiaries (persons participating in the voluntary early retirement subsidy), and the procedures for receiving benefits. Siemon v. AT & T Corp., 117 F.3d 1173, 1178 (10th Cir.1997). Finally, "in light of all the surrounding facts and circumstances, a reasonable employee would [have] perceive[d] an ongoing commitment by the employer to provide employee benefits."

      The 2001 Letter also satisfies these minimal requirements for establishing an ERISA plan.  It states that UWG would provide a company paid life insurance benefit equal to 1 1/2 times Mr. Delano's final earnings.   Thus, there is a funding mechanism, and it does place

periodic demands on UWG to allocate company resources to pay the premiums, as well as to actually pay the premiums themselves.

The 2001 Letter does not state that Mr. Delano's benefits may be terminated at the discretion of UWG, or its successor. Under the terms of the 2001 Letter, Mr. Delano was vested in his life insurance benefit, which is stated to be a "company-paid life insurance benefit", which necessarily including having the premiums on the life insurance policy paid until Mr. Delano's death. Further, there was no right stated in the 2001 Letter to terminate this ERISA plan.

As stated in previous letters, Mr. Delano was led to believe, and reasonably believed, that in exchange for surrendering his last 9 months of compensation, a sum equal to approximately $100,000, as well as the benefits that would accrue therefrom, he would be vested in a paid life insurance policy until his death so that the insured amount of policy proceeds would be paid to his designated beneficiary.

The position now being taken that the Life Executive Plan – Split Dollar Agreement governs his benefit, is contrary to the terms of the 2001 Letter agreement, his understanding of the benefit conferred on him for taking early retirement, and constitutes fraud in the inducement. Accordingly, if SuperValu's position remains that Mr. Delano was not vested, and that the life insurance could be terminated at will, Mr. Delano is electing to rescind the 2001 Letter on the grounds of fraud, and is requesting the 9 months of compensation to be paid to him together with pre-judgment interest at the statutory rate of ten percent per annum.

Also, under the rules of construction for contracts, if it is determined that there are any ambiguities in the 2001 Letter, the ambiguities are held against the drafter (UWG), and in favor of the non-drafting party's understanding of the drafting party's obligation.

It is also clear that UWG did not abide by the terms of the 2001 Letter. The scheduled premium on the life insurance policy is $24,449.70 per year. Since there were 16 policy years since the date of his retirement, the total premiums that should have been paid total $391,995.20. However, the actual premiums paid during that time was $270,006.99, a $121,402.72 shortage. Further, despite the promise that UWG would pay the premiums, premiums were skipped in 2003, 2006, 2011, 2012 and 2013. Had UWG complied with the terms of the 2001 Letter and the premium schedule, the policy would have either been a paid-up policy, or the premiums that would be required to be paid at this time would have been substantially reduced, potentially to the level that Mr. Delano could have continued to pay the premiums to keep the policy in force.

Further, SuperValu has accepted the contractual obligation of UWG to maintain the policy and pay the premiums under the terms of the Agreement and Plan of Merger dated April 10, 2017 ("Merger Agreement"). The merger was governed by the General Corporation Law of the State of California.

As defined in Section 8.14 of the Merger Agreement:

"Company Plan" means any benefit or compensation plan, program, policy, practice, agreement, contract, employment agreement, arrangement or other obligation, whether or not in writing and whether or not funded, in each case, which is sponsored or maintained by, or required to be contributed to, or with respect to which any potential

liability is borne by the Company or any of its Subsidiaries. Company Plans include, but are not limited to, "employee benefit plans" within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA" and "ERISA Plans," respectively), employment, consulting, retirement, severance, termination or change in control agreements, deferred compensation, equity-based, incentive, bonus, supplemental retirement, profit sharing, insurance, medical, welfare, fringe or other benefits or remuneration of any kind.

Under California Corporations Code §1107(a), as a result of the merger, SuperValu, as the surviving corporation, is subject to all of the debts of liabilities of UWG, the disappearing corporation, as a matter of law.  Further, SuperValu expressly agreed to assume UWG's employee benefit plans and obligations in Section 5.10 of the Merger Agreement.  Even if SuperValu contents that Mr. Delano's ERISA Plan was not properly disclosed by UWG, that is an issue between SuperValu and UWG under the terms of the Merger Agreement, and does not affect the global assumption obligation under California Corporations Code §1107(a).

Although Mr. Delano respectfully requested an extension of time to obtain further information and documents, SuperValu ignored this request.  Therefore, as part of this appeal, Mr. Delano is requesting the following information and documents from SuperValu, and reserves the right to supplement this appeal letter upon receiving the following information:

To the extent not already provided, please provide Mr. Delano, in care of our office, with the following information and documents:

All documents relied upon by SuperValu in support of its position that it can unilaterally terminate the life insurance policy on Mr. Delano's life under the ERISA Plan set forth in the 2001 Letter.

All documents that SuperValu believes set forth a procedure under ERISA for contesting or appealing its decision to terminate the life insurance policy on Mr. Delano's life under the ERISA Plan set forth in the 2001 Letter.

The application for Mr. Delano's life insurance policy, including the agent's report.

The underwriting file.

Any sales material used by the agent furnished to the carrier.

The original 2001 signed policy illustration.

The policy anniversary statements and all correspondence including but not limited to billing/premium statements, updates, policy changes, etc.

Any sales material used by the agent furnished to the carrier.

Any policy illustrations of what the single premium would have been in 2002 to fully pay up the life insurance at that time?

ERISA Appeal Ltr                    4

Confirm that the insurance policy is still in force.

Any other procedure with which Mr. Delano must comply to contest or appeal SuperValu's decision to terminate the life insurance policy on Mr. Delano's life under the ERISA Plan set forth in the 2001 Letter.

Any additional information which SuperValu believes is necessary to properly decide these issues.

Please be advised that this letter is only addressing Mr. Delano's ERISA rights and claims. By exercising his appeals rights, Mr. Delano is not relinquishing nor waiving any other claims or remedies, including any and all claims for damages, exemplary damages, attorney's fees and costs that he may have in federal or state law or equity.

Sincerely,

SPENCER T. MALYSIAK

STM/ra

cc:     Harley Delano
        Steve Bertino
        William P. Roscoe, III, Esq.