**Spencer T. Malysiak**
State Bar #084654
**SPENCER T. MALYSIAK LAW CORPORATION**
3500 Douglas Blvd, Suite 200
Roseville, CA  95661
Telephone:     (916) 788-1020
Facsimile:     (916) 788-0404

**William P. Roscoe, III**
State Bar #049733
915 University Avenue
Sacramento, CA  95825-6724
Telephone:     (916) 920-1800
Facsimile:     (916) 920-1807

Attorneys for Plaintiff
HARLEY DELANO

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARLEY DELANO,<br><br>            Plaintiff,<br><br>    vs.<br><br>UNIFIED GROCERS, INC., aka Unified Western Grocers, a California corporation; SUPERVALU, INC., a Delaware corporation;<br><br>            Defendants. | Case No: 2:19-CV-00225-TLN-DB<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**<br><br>(Fed.Rules Civ.Proc.Rules 52, 56)<br><br>Date:   December 17, 2020<br>Time:  2:00 p.m.<br>Courtroom:  2<br><br>Honorable: Troy L. Nunley |

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 2

II.    JURISDICTION .................................................................................................. 3

III.   PROCEDURE FOR MOTION ............................................................................. 4

IV.    STANDARD OF REVIEW ................................................................................. 6

V.     FACTS ............................................................................................................... 10

       1. Initial Group Life Insurance Plan and Split Dollar Policy ......................... 10

       2. The Delano Retirement Contract. ............................................................... 11

       3. The Termination of Harley's Life Insurance Policy. .................................. 12

       4. Harley's Objection to Termination of Life Insurance Policy. .................... 13

       5. Defendants' Denial of Benefits. ................................................................. 13

       6. Harley's Appeal of the Defendants' Position. ........................................... 14

       7. The Defendants' Benefit Committee Consideration of Appeal. ................ 15

       8. The Denial of the Appeal. .......................................................................... 15

VI.    ISSUES PRESENTED ...................................................................................... 18

VII.   ARGUMENT .................................................................................................... 20

       1. The Court must interpret and construe the Delano Retirement Contact to determine
          whether it is an ERISA Plan. ..................................................................... 20

       2. The Delano Retirement contract, and the life insurance benefits it provides, may
          not be terminated unilaterally by Defendants. ........................................... 27

       3. Defendants breached the Delano Retirement Contract. .............................. 29

       4. The Court should order defendants to reinstate Harley's life insurance policy, paid
          up to date, or to provide a life insurance policy of equal quality and financial worth
          without cost and expense, including any adverse tax cost or expense, to Harley .......... 29

       5. Harley's Third and Fourth Causes of action are not pre-empted even if there
          is a finding that the Delano Retirement Contract is an ERISA Plan. ............................ 30

       6. The Court should in all events proceed to adjudicate Harley's Third and Fourth
          Causes of Action. ...................................................................................... 33

VIII.  CONCLUSIONS .............................................................................................. 36

# TABLE OF AUTHORITIES

## CASES

*Abatie v. Alta Health Life ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) ................................... 7, 27

*Acosta v. Brain, 910 F3d 502,519 (9th Cir. 2018)* ................................................................ 9

*Acri v. Varian Assoc., Inc*., 114 F.3d 999 (9th Cir. 1997) ............................................... 33, 34

*Aetna Health Inc. v. Davila*, 542 U. S. 200, 228-230 (2004) ................................................ 31, 32

*Alday* ........................................................................................................................... 23, 24

*Alday v. Raytheon Co.,* 693 F.3d 772, 782 (2012)..................................................................... 27

*Allis Chalmers Corp v. Lueck* 471 U. S. 202, 211 (1985) ......................................................... 31

*Anderson v. Liberty Mut. Long Term Disability Plan*, 116 F.Supp.3d 1228, 1231 (W.D. Wash.

   2015)................................................................................................................................... 6

*Blankenship v. Liberty Life Assur. Co. of Boston* (9th Cir. 2007) 486 F.3d 620 ......................... 23

*Bounds v. KMA Group et al,* 229 Cal.App. 4th 468 (2014).......................................................... 35

California Welf. & Inst. C. §§15610(c) ................................................................................... 33

*Cigna Corp. v. Amara*, 563 U.S. 421 ( 2011) ........................................................................... 7

*Cinelli v. Security Pac. Corp.*, 61 F.3d 1437, 1441-1442 (9th Cir. 1995)....................... 8, 24, 27

*Cinelli v. Security Pacific Corp.* 61 F.3d 1437, 1441-1443 (9th Cir. 1995)................................. 7

*Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78 (1995) ............................................. 9

*Deboard v. Sunshine Min. and Refining Co.,* 208 F.3d 1228 (10th Cir. 2000) ............................ 14

*Demer v. IBM Corporation LTD Plan, (9th Cir. 2016) 835 F.3d 893* ................................... 9, 10

*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989)........................................... 6, 27

*Flores v. American Seafoods Co.,*  335 F.3d 904, 912 (9th Cir. 2003) ....................................... 29

*Fort Halifax Packing Co. v Coyne*, 482 U. S. 1, 9 (1987) .......................................................... 25

*Graham v. Balcor Company*, *infra*, 146 F.3d 1052 (9th Cir. 1998) ..................................... 23, 25

*Graham v. The Balcor Company*, 146 F.3d 1052 (9th Cir. 1998) .............................................. 25

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143-145 (1990) ................................................ 31

*Ingersol-Rand Co.v .McClendon*, 133, 143-145 (1990) ...................................................... 32

*Katherine P. v. Humana Health Plan, Incorporated,* 959 F.3d 206 (5th Cir. 2020) ..................... 5

*Kearney v. Standard Life Insurance Company*, 175 F3d 1084, 1094-1096 (9th Cir. 1999)... 4, 5, 6

Kinstler v. First Reliance Standard Life Insurance Company, 181 F.3d 243 (2nd Cir. 1999) ....... 8

*Koch v. Metro Life Ins. Co.,* 425 F. Supp. 741, 747 (N .D. Tex. 2019 ........................................... 5

*Kokkoren v. Guardian Life Insurance Co*. 511 U.S. 375 (1994) ................................................... 4

*Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 538–40 (9th Cir.1990) ............................... 23

*Lee v. Kaiser Found. Health Plan Long Term Disability Plan,* 812 F.Supp.2d 1027, 1032

    (N.D.Cal.2011) ...................................................................................................................... 6

*Metropolitan Life Ins. Co. v. Glenn*, 2343,2350-2351 (2008) ...................................................... 7

*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58-65 (1987) ..................................................... 31

*Miller v. Rite-Aid Corp.*, 504 F.3d 1102 (2007) ......................................................... 20, 26, 31

*Mongeluzo v. Baxter Travenol Disability Ben,* 46 F.3d 938, 943-944 (1995)............................ 4, 8

*Muller v. First Unum Life Ins. Co*., 341 F. 3d 119, 124, 125. (2nd Cir. 2003) ............................. 5

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S.

    645, 654, 657, (1995)............................................................................................................ 30

*Patterson v. Hughes Aircraft Co.* 11 F.3d 948, 949 fn. 1 and 2 (9th Cir. 1993) ........................... 8

*Peacock v. Thomas*, 516 U.S. 349 (1996)...................................................................................... 4

*Pilot Life Ins. Co. v. Dedeaux*, 481 U. S. 41, 54, (1987) ...................................................... 25, 32

*Quesenberry v. Life Ins. Co. Of North America*, 987 F.3d 1017, 1025 (4th Cir. 1993) ................ 4

*Tuttle v. Varian Med. Sys*., 15 F.Supp. 3d 944, 949 (D.C. Arizona) ............................................ 7

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ..................................................... 33

*United Mine Workers v. Gibbs,* 383 US 715, 725 (1966)............................................................. 4

*Wilkins v. Baptist Health Care Sys*., 150 F.3d 609, 619 (6th Cir. 1998) ...................................... 5

**STATUTES**

28 U.S.C. §1391(b)(2) and (3) ........................................................................................ 3, 33

28 U.S.C. §1391(c)(2) ...................................................................................................... 3

29 U.S.C. §1367(a) .......................................................................................................... 3

28 U.S.C. §1367 .............................................................................................................. 4

28 U.S.C. §1391(b)(1) ..................................................................................................... 3

28 U.S.C. 1367(a) ............................................................................................................ 33

28 U.S.C. 1367(c)(2) and (3) ........................................................................................... 33

29 U.S.C 1132(a) ............................................................................................................. 31

29 U.S.C. §1132(a)(1)(B) .............................................................................................. 3, 5

29 U.S.C. §1132(e)(1) ..................................................................................................... 3

29 U.S.C. §1132(e)(2) ..................................................................................................... 3

29 U.S.C. §1133(1) .......................................................................................................... 4

29 U.S.C. Section1144(a) ........................................................................................ 30, 31, 32

Cal .Wel. & Ins. C §15610(c) .......................................................................................... 35

Cal. Wel. &Ins. C §15610.30 .......................................................................................... 33

Cal. Wel. &Ins. C §15610.30(b) ...................................................................................... 35

Cal. Wel. &Ins. C §15610.70 ..................................................................................... 33, 35

Cal. Wel. & Ins. C §15675(a) .......................................................................................... 31

Cal. Wel. & Ins. C §15657.5(a) ....................................................................................... 35

ERISA Section 502(a)(1)(B) ............................................................................................ 32

ERISA Sections 1367(c)(2) .............................................................................................. 33

**RULES**

FRCP Rule 56 ................................................................................................................... 5

# I.   INTRODUCTION

The Plaintiff Harley Delano ("Harley") is requesting the Court to enter judgment in Harley's favor on the First and Second Causes of Acton on the grounds that the Defendants wrongfully terminated a policy of insurance on Harley's life.   As a result of the Defendants wrongfully terminating Harley's life insurance policy, Harley is deprived of a material benefit that was negotiated between Harley and Defendant Unified Grocers, Inc. ("Unified") at the time that Harley severed his employment.   Consequently, Harley is entitled to restoration and recovery from Defendants of the policy of insurance on his life, and the benefits associated therewith, or damages for Harley's loss on account of the Defendants' wrongful termination of Harley's life insurance policy.

Defendants do not dispute that the policy was terminated, but instead contend that they had the contractual right to do so.

The dispute is somewhat complicated by the fact that there are involved two separate written agreements, executed at different times; thus raising legal issues of contractual interpretation and construction of these documents.   The first document is an Executive Insurance Plan and Split Dollar Agreement signed by Harley on December 27, 2000 ("Executive Life Plan", Admin. Rec. 23-29)[1], and the second document is a December 20, 2001 letter agreement executed by Harley and Unified when Harley retired (the "Delano Retirement Contract", Admin. Rec. 21-22).   The Delano Retirement Contract is unique to Harley and was entered into as a means for Harley to retire early by having him agree to forego his compensation in 2002 in exchange for the benefits stated in the letter.   Because of the two conflicting written agreements, Harley is asking

---

[1] Plaintiff will refer to the Administrative Record as Admin. Rec. followed by the page number(s) of the document.

this Court to determine 1) whether the Delano Retirement Contract is an Employee Welfare Benefit Plan under the Employment Retirement Income Security Act (hereafter ERISA), thus invoking ERISA in the first instance, 2) if the Delano Retirement Contract is an ERISA Plan, whether it incorporates the Executive Life Plan, or 3) whether the Delano Retirement Contract is instead construed as a contract between Defendants and Harley separate and distinct from an ERISA Plan.  Additionally, the determination of ERISA application raises the further issue of whether two state law claims, joined in supplemental jurisdiction with the ERISA claims, are subject to preemption under ERISA.

## II.      JURISDICTION

This Court has jurisdiction of Harley's first and second causes of action that are ERISA claims based on denial of benefits pursuant to 29 U.S.C. §1132(a)(1)(B).  This Court has subject matter jurisdiction of this action as a complaint pursuant to 29 U.S.C. §§1132(e)(1), and 1367(a). This Court has personal jurisdiction over all Defendants because they are all residents of the United States and ERISA provides for nation-wide service of process pursuant to 29 U.S.C. §1132(e)(2). Venue is proper under 29 U.S.C. §1132(e)(2) because the ERISA plan discussed herein is administered within this district, some or all of the fiduciary breaches for which relief is sought occurred, and one or more Defendants reside or may be found, in this district, and is proper under 28 U.S.C. §1391(b)(1) and (2), and (c)(2) since the Defendants are subject to the Court's personal jurisdiction in this District as a result of their business contacts within this District, and substantially all of the events upon which the claims are based occurred in this District.

This Court has supplemental jurisdiction of Harley's Third Cause of Action which is a California state law claim for Financial Elder Abuse; and Harley's Fourth Cause of Action which is a straight California state law claim for breach of contract.  Such supplemental jurisdiction exists

pursuant to 28 U.S.C. §1367 in that such claims and the ERISA claims derive from a "common nucleus of operative fact" and would "ordinarily be expected to be tried in one proceeding." *United Mine Workers v. Gibbs,* 383 US 715, 725 (1966); *Peacock v. Thomas*, 516 U.S. 349 (1996); *Kokkoren v. Guardian Life Insurance Co*. 511 U.S. 375 (1994).  Because the Court will determine both the ERISA claims and state law claims under the same de novo standard of review to construe and interpret the contracts, the same process will determine whether Defendants are correct that they had a right to unilaterally terminate Harley's insurance policy, or as Harley contends, the Defendants did not have the right to do so.

Such judicial economy and reduction of the burdens and expenses of protracted litigation are the very objectives of both supplemental jurisdiction generally under 28 U.S.C. §1367, and particularly in ERISA cases as held in *Kearney (infra)*.

## III.    PROCEDURE FOR MOTION

The procedure here is a Motion for Judgment on Papers of the Administrative Record.  This procedure arose out of the requirements of ERISA limiting the scope of judicial review to a review of the administrative record that was before the administrator.  *Quesenberry v. Life Ins. Co. Of North America*, 987 F.3d 1017, 1025 (4t Cir. 1993); *Mongeluzo v. Baxter Travenol Disability Ben,* 46 F.3d 938, 943-944 (1995).  In *Mongeluzo*, the Ninth Circuit has held that consideration of additional evidence outside of the record is allowed, in the discretion of the District Court, only "if necessary" to conduct an adequate de novo review of a claim. *Id*.  Here, when the *de novo* review largely consists of a process of interpretation and construction and the adjudication of a denial of benefits claim the Court must focus on the contractual terms and conditions of an ERISA "Plan" itself, not what may otherwise turn up in the administrative record" the parties may insist be placed before the court. 29 U.S.C. §1133(1).

Harley's ERISA right of action is to 'recover" or "enforce" or "clarify" "…rights under the terms of the plan." 29 U.S.C. §1132(a)(1)(B).

Although in many cases use of the summary judgment procedure under FRCP Rule 56 is invoked, that procedure often does not work well in ERISA cases.  This is due to the fact that a principle inquiry of summary judgment or adjudication is whether there exist disputed issues of fact, but without any possibility of weighing the evidence to reach a decision thereon.   In recognition of that difference, the Ninth Circuit in *Kearney v. Standard Life Insurance Company*, 175 F3d 1084, 1094-1096 (9th Cir. 1999) found that the District Court may try an ERISA case to final judgment solely on the record that the Plan administrator had before it.  The Court found this procedure would be "vastly less expensive" and accomplishes the policies of the statute, while preserving the significance of the duties of the Plan administrator to review claims." *Kearney* at 1095.  Accordingly, no bench trial is conducted, and testimony and witnesses are not heard, but the Court proceeds to judgment with findings of fact and conclusions of law "on the papers" with the District Court acting as finder of fact. *See Muller v. First Unum Life Ins. Co*., 341 F. 3d 119, 124, 125. (2nd Cir. 2003).  In this respect, the administrative record is in the nature of an exhibit at trial, which exhibits are routinely the basis for findings of fact and conclusions of law, "though no one reads them out loud." *Kearney, supra,* at 1094-1095.

Other Courts have also recognized this procedure.  *Eg. Wilkins v. Baptist Health Care Sys*., 150 F.3d 609, 619 (6th Cir. 1998); or appear to have approved same.  *See Katherine P. v. Humana Health Plan, Incorporated,* 959 F.3d 206 (5th Cir. 2020).  Courts have routinely denied summary judgment motions in ERISA cases, but then nevertheless proceeded directly to judgment on the record.  *See eg. Koch v. Metro Life Ins. Co.,* 425 F. Supp. 741, 747 (N .D. Tex. 2019), or remanded for further proceedings and judgment solely on the record as in *Kearney supra*, at 1094.  Use of

this procedure is widespread, more often by Defendants in ERISA actions, but the procedure is equally available to Harleys. *Kearney, id.*

Thus, when applying the *de novo* standard in an ERISA benefits case, a trial on the administrative record, which permits the court to make factual findings, evaluate credibility, and weigh evidence, appears to be the appropriate proceeding to resolve the dispute. *See Lee v. Kaiser Found. Health Plan Long Term Disability Plan,* 812 F.Supp.2d 1027, 1032 (N.D.Cal.2011) and *Anderson v. Liberty Mut. Long Term Disability Plan,* 116 F.Supp.3d 1228, 1231 (W.D. Wash. 2015) ("*De novo* review on ERISA benefits claims is typically conducted as a bench trial under Rule 52").

Since the Court must construe the contracts and determine whether they are ERISA Plans or not, such determinations will likely lead to the disposition of this entire case, and make clear the path for final disposition of the remaining state law claims. If an ERISA Plan and ERISA claim is found and adjudicated, the Court may determine on this motion whether the state law claims fall within or without the limited scope of ERISA preemption. If no ERISA Plan and thus no ERISA claims are found, the Court may then determine whether it will proceed to decide the state law claims under its supplemental jurisdiction.

## IV.    STANDARD OF REVIEW

The Standard of Review on this motion for judgment on the administrative record is *de novo. Anderson v. Liberty Mut. Long Term Disability Plan, id.* In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989) the Supreme Court advised that if an ERISA plan does not confer discretion on the Administrator, that:

> "… a court must review the denial of benefits de novo "regardless of whether the plan is funded or not, or the administrator is acting under a conflict of interest." Accord.  Abatie v. Alta Health Life Ins. Co., 458 F.3d 955, 963 (9th Cir.

2006) citing Firestone at 115; De Novo is the default standard of review. *Kearney v. Standard Ins. Co.*, 175 f.3d 1084, 1089 (9th Cir 1999)(en banc).

In *Abatie,* at 962, the appellate court held:

We review *de novo* a district court's choice and application of the standard of review…in ERISA cases. *Lang v. Long-Term Disability Plan of Sponsor Remote Tech., Inc.* 125 F.3d 794, 797 (9th Cir. 794). We review for clear error the underlying findings of Fact. *Friedrich v. Intel Corp.,* 181 F.3d 1105, 1109 (9th Cir. 1999).

When the Plan has reserved discretion to the Administrator to interpret the terms and conditions of the Plan, the standard is not *de novo*, but rather abuse of discretion.  In that case, a court reviews the plan and benefits determination with deference to the administrator's discretion. The degree of deference however is more or less on a sliding scale of magnitude.  When, as here, there exists a conflict of interest because the Administrator is the party who is also bearing the cost of the benefit, that conflict of interest results in much diminished deference.  *Metropolitan Life Ins. Co. v. Glenn*, 2343, 2350-2351 (2008).  In this respect, any such reservation of discretion must appear in the Plan itself, which can be cause for confusion of what constitutes the "plan" because there are often numerous documents that do not constitute the plan itself present in the record.  For example, a requirement of ERISA is that a document, often lengthy, called a "Summary Plan Description" must be provided to beneficiaries.  Here the Summary Plan Description (Admin. Rec. 173-208) is lengthy, and includes the group insurance policy behind the Executive Life Plan. However, summary plan descriptions are <u>not</u> part of the ERISA Plan itself to be reviewed by the court.  *Cigna Corp. v. Amara*, 563 U.S. 421 (2011), (131 S.Ct. 1866, 1878); *see also Tuttle v. Varian Med. Sys.*, 15 F.Supp. 3d 944, 949 (D.C. Arizona).  To be distinguished from this case also are those ERISA fact situations in which the insurance policy has been actually designated as the ERISA plan, as in *Cinelli v. Security Pacific Corp.* 61 F.3d 1437, 1441-1443 (9th Cir. 1995).  In *Cinelli*, the corporate board resolution authorizing the Plan specifically designated the insurance

policy as the plan.  Other statements in the board resolution describing vesting of benefits were not included in the plan.  *Cinelli, id., at 1440*

In this case there exists no reservation, in either the Executive Life Plan or the Delano Retirement Contract, of discretion in the administrator to interpret the documents.  A reservation of discretion in the administrator cannot be merely implied.  In *Kinstler v. First Reliance Standard Life Insurance Company*, 181 F.3d 243 (2nd Cir. 1999) the court held the de novo standard applies to determine benefits, and importantly here, to interpret and construe the terms and conditions of an ERISA plan, " in the absence of a clear reservation of discretion in to the plan administrator" (emphasis furnished.)  *Kinstler*, at 243, 244.; See also *Patterson v. Hughes Aircraft Co*. 11 F.3d 948, 949 fn. 1 and 2 (9th Cir. 1993) (examples of language that sets forth discretion in a plan). Each of the cases cited (and further cases cited therein) quote, in the written plan itself, an affirmative written and specific grant to the administrator of discretionary authority.  Such authority is granted in each case with specificity to determine eligibility, or to construe and interpret a specific plan provision, or plan terms and conditions generally.  In this case, no such grant of discretion is included in either the Executive Life Plan or the Delano Retirement Contract. (Admin Rec. 23-29 and 21-22).  The *de novo* standard applies to "all aspects of the denial of the claim", including fact issues.  *Kinstler* at 243-244.  Any ambiguities in that respect must be resolved against the employer who drafted, and provided, the written plan.  *Kinstler, supra* at 233-244; *Mongeluzo supra* at 942.  Notwithstanding the lack of any grant of discretionary authority whatever to the administrator to do so, Defendants nevertheless proceeded to interpret and construe both the Executive Life Plan and the Delano Retirement Contract in conjunction with each other, and thus as a single integrated agreement that included the right to terminate set forth in the Executive Life Plan. *See* December 12, 2017 letter from Supervalu denying Harley's claim (Admin

---

Rec. 60-64) and the April 9, 2018 letter from Supervalu denying Harley's appeal of the determination to terminate his life insurance (Admin. Rec. 57-59).

The anticipated argument of Defendants is that The Executive Life Plan and ERISA itself include a right to terminate, and that such right itself confers discretion on the administrator to do so. However, as Defendants' would possibly agree, such is not a case on the basis of *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78 (1995). In that case, the Supreme Court made it explicitly clear that an employer company, when it is also the administrator of its own welfare benefit plan, is not acting as a fiduciary of the plan when it makes the business decision to terminate or modify an ERISA welfare benefit plan. *See also Acosta v. Brain, 910 F3d 502, 519 (9th Cir. 2018).* Accordingly, an express provision in a plan providing a right to terminate, or actually acting to terminate, does not reserve discretion. This is so because it is not the administrator who is acting to terminate, but rather the company acting in its entirely separate business capacity apart from the administrator. Under ERISA, the Court is reviewing the actions of the administrator de novo, not the actions of the Company in its separate business capacity.

The case of *Demer v. IBM Corporation LTD Plan*, (9th Cir. 2016) 835 F.3d 893, at 899–900, also discusses the standard of review in light of the *Glenn* decision. The *Demer* court stated that the reviewing court must first address whether the Defendants had a conflict of interest such that this Court's review of the Defendants' decision should be tempered by skepticism, citing to *Harlick v. Blue Shield of California*, 686 F.3d 699, 707 (9th Cir. 2012). If this Court were to determine that an abuse-of-discretion standard is appropriate, this Court must also consider a conflict of interest of the administrator in the abuse-of-discretion review, the weight of which depends on the severity of the conflict. Even if the plan gives discretion, but the administrator

operates under a conflict of interest, then the conflict of interest must be weighed as a factor in determining whether there is an abuse of discretion.

The Group Life Insurance Plan adopted by Defendant Unified states that the employer is both the plan sponsor and the plan administrator.  [Admin. Rec. 185]  Further, the chain of emails sent between the members of the Unified Grocers, Inc. Benefits Committee [Admin. Rec. 277 - 281] confirms that it is Unified's internal committee, and not an independent or outside administrator, that made the determination to deny Harley's benefits.  Because of this conflict, this Court has the right to determine this matter under the *de novo* standard of review.  However, should the Court decide that it must use the abuse of discretion standard, then it must also view the decisions of the Benefits Committee with skepticism as per the *Demer* case.

## V.    FACTS

The Administrative Record that was produced by the Defendants and accompanies this motion as an appendix, contains the pertinent facts.

1.    Initial Group Life Insurance Plan and Split Dollar Policy.

On December 27, 2000, Defendant Unified acquired the Unified Western Grocers Executive Insurance Plan Split-Dollar Agreement for Harley's benefit.  [Admin. Rec. 23 - 29] Pursuant to this Executive Life Plan, the Employer (Unified) was required to pay all of the premiums due on the Policy [Admin. Rec. ¶2 at 23]  Although the record does not contain any information about an insurance policy issued at that time, there is an inforce illustration dated 10/27/2017 of a flexible premium adjustable life insurance policy #1562962 for Harley [Admin. Rec. 30 - 46].  The original policy date is 6/15/2001 [Admin. Rec. 31].  Under this Plan, Harley was to receive a death benefit equal to 300% of his final pay.  [Admin. Rec. 25].  The Split Dollar

Agreement can be terminated under Section 6 for separation from service or by written notice by the employer to the employee.  [Admin. Rec. 26].

On or about January 1, 2001, Defendant Unified adopted a Group Life Insurance Plan for the benefit of its employees.  [Admin. Rec. 173 - 208] This Plan was adopted <u>after</u> the date of the Executive Life Plan.  The terms of the Group Life Insurance Plan has the following features:

    A.   The policyholder was Unified, which is also designated as the employer.  [Admin. Rec. 179]

    B.   Active employees become Members of this Plan on the first day after they have worked for 30 consecutive days.  [Admin. Rec. 179]

    C.   A member of Class 1 (salaried employees) will receive a policy with an amount of insurance equal to 1 times the annual earnings.  [Admin. Rec. 181]

    D.   After a member reaches age 65, the amount of insurance will be reduced to 65%, and once a member reaches age 70, the amount of insurance will be reduced to 50%. [Admin. Rec. 183]

    E.   The Life Insurance ends on the date that the member's employment terminates. [Admin. Rec. 187]

    F.   Defendant Unified was and is both the Plan Sponsor and the Plan Administrator. [Admin. Rec. 185]

    2.   The <u>Delano</u> <u>Retirement</u> <u>Contract.</u>

On December 20, 2001, after the insurance policy was issued for Harley, he entered into the Delano Retirement Contract with Defendant Unified.  [Admin. Rec. 3-4]   This Contract confirms that it is regarding Harley's retirement from Unified effective January 2, 2002.  It also confirms that Harley's scheduled retirement date was to be September, 2002; however, he will

instead retire on January 2, 2002.  As consideration for retiring early and agreeing not to be paid his salary beyond January 2, 2002, Harley will receive the following benefits from Defendant Unified: (a) Retiree Medical Coverage, (b) Executive Life Insurance, and (c) Executive Salary Protection Plan II.  The death benefit was reduced to 150% of Harley's final earnings when he retires.  This Contract does not contain the right of termination; in fact, it states that the policy will be provided to Harley on his retirement date, and that "This letter comprises the entire agreement and supersedes any prior conditions of employment . . ."  [Admin. Rec. 3].  By July 11, 2002, Defendant Unified procured a life insurance policy on Harley's life with a current death benefit of $287,135 from Security Life of Denver. [Admin. Rec. 212 - 245].

   3.   The Termination of Harley's Life Insurance Policy.

   On June 23, 2017, Defendant Unified was merged into a wholly owned subsidiary of Defendant Supervalu by a statutory reverse triangular merger.[2]  Then, after the Life Insurance Policy had been in place for over 15 years, Supervalu sent a letter to Harley dated October 20, 2017 notifying him that it has been evaluating the "costs and competitiveness of its benefits program", and that as a result of such evaluation, the Defendants were terminating the Executive Life Plan.  This letter also states that the Defendants were also terminating Harley's Split Dollar Agreement, and that it would no longer pay the premiums.  The letter specifically refers to the Voya (successor to Security Life of Denver) policy number 152962 – the same policy issued to Harley around July 11, 2002. [Admin. Rec. 51-53]  On November 1, 2017, Defendants sent a Benefits Notification to Harley again stating that it was terminating Harley's life insurance policy. [Admin. Rec. 47-50]

---

[2]  Accompanying this motion is a Request for Judicial Notice of the Agreement of Merger filed with the California Secretary of State's office.

By the time that the Defendants had sent the October 20, 2017 letter to Harley, the Board of Directors had already adopted a resolution to terminate the Executive Insurance Plan.  [Admin. Rec. 285]

4.    Harley's Objection to Termination of Life Insurance Policy.

On November 20, 2017, counsel for Harley sent a letter to Supervalu by certified mail objecting to the proposed termination of the life insurance policy.  [Admin. Rec. 16-20].  In this letter, Harley objected on several grounds, including the assertion that the Delano Retirement Contract was not part of any ERISA Plan, but was instead a stand-alone contract.  He was to receive the life insurance and other benefits as consideration for his early retirement.  It was his understanding that the life insurance policy would remain in place, with the Defendants paying the premiums, until his death and that this was the bargain he made when he retired early by nine months, foregoing his salary as a consequence.  This letter also pointed out that Harley's insurance was originally obtained under a split-dollar agreement and not under Unified's group term life insurance plan.

5.    Defendants' Denial of Benefits.

On December 12, 2017, Defendants sent a letter to Harley's attorney reiterating its decision to terminate Harley's life insurance policy and denying him the benefits of that policy.  [Admin. Rec. 60-64]  In denying the benefits, the Defendants took the position that the Executive Life Plan, which included the right to terminate, governed the arrangement between Harley and the Defendants, and not the Delano Retirement Contract.  In fact, the Defendants acknowledged that the terms of the Delano Retirement Contract violated the terms of Executive Life Plan because, under the terms of the Executive Life Plan, Harley's separation from service would have terminated the Executive Life Plan.  Rather than acknowledge and agree that the Delano

Retirement Contract was a separate and distinct contract, the Defendants quoted the language in the Delano Retirement Agreement that "This letter comprises the entire agreement and supersedes any prior conditions of employment, including those outlined in my letter of July 20, 2001."  After quoting this language, the Defendants insisted that nothing in the Delano Retirement Contract limits the Defendants' ability to terminate the Executive Life Plan.  [Admin. Rec. 61]

There are Minutes of the Meeting of the Unified Grocers, Inc. Benefits Committee dated December 11, 2017 that address Harley's claims.  [Admin. Rec. 1-2] The Minutes confirm that the Benefits Committee unanimously denied Harley's claim.

6.    <u>Harley's</u> <u>Appeal</u> <u>of</u> <u>the</u> <u>Defendants'</u> <u>Position.</u>

On February 9, 2018, Harley timely filed an appeal to the Defendant's determination to preserve his rights under ERISA.  [Admin. Rec. 6-10]  In this appeal, Harley stated that the Delano Retirement Contract was not governed by the Executive Life Plan, but was instead a separate and distinct ERISA plan for his benefit.  Harley cited to the case of *Deboard v. Sunshine Min. and Refining Co.,* 208 F.3d 1228 (10th Cir. 2000) as support for his position.  The letter also took the position that the use of the split dollar life insurance policy, which was obtained prior to the Delano Retirement Contract, was nothing more than a funding mechanism.  This letter further stated that the Delano Retirement Contract does not state that Harley's benefits could be terminated at the discretion of the Defendants.  The letter further stated that the Defendants had failed to timely and regularly pay the scheduled premiums on the life insurance policy, which eroded the cash surrender value and increasing the premiums that Harley would have had to pay if he had decided to keep the policy in force.  [Admin. Rec. 7-8]

This letter further explained that, under the terms of the merger, Defendant Supervalu had accepted the contractual obligations of Defendant Unified, including the obligation to maintain the

policy.  Finally, the letter states that Harley was not relinquishing nor waiving any other claims or remedies that he may have by filing the appeal.  [Admin. Rec. 9-10]

7.     The Defendants' Benefit Committee Consideration of Appeal.

The documents that address the Defendants' consideration of Harley's appeal consist of a chain of emails between the Benefits Committee members discussing the appeal [Admin. Rec. 277-281], which includes the analysis of the appeal by Supervalu's attorneys [Admin. Rec. 282-84].

The emails are between the members of the Benefit Committee -- Bill R. Seehafer, Martina Juarez, Jon R. Born, David W. Johnson, and Jenny J. Kruckeberg, who are all employees of Supervalu.  Attached to the emails is an Analysis of Harley's Appeal prepared by attorney Cynthia Y. Yee.  [Admin. Rec. 282-284] The analysis explains Harley's position and poses various questions for consideration and determination by the Benefit Committee members.  However, the administrative record show scant consideration or discussion of these questions.  Instead, the last emails in the chain (which are the first ones in the email chain due to reverse chronological order) merely state that the members approve denying the claim.  [Admin. Rec. 277]

8.     The Denial of the Appeal.

On April 9, 2018, Defendant Supervalu sent a letter to Harley's attorney confirming that it was denying his appeal.  In denying the appeal, Defendant Supervalu stated that the description of the Executive Life Plan benefits clearly includes references to the terms of an already existing Executive Life Plan, and therefore the Delano Retirement Contract was not an independent ERISA plan.  Again, relying upon the language in the Executive Life Plan, Defendant Supervalu determined that it had the unfettered right to terminate the life insurance and that the Delano Retirement Contract should be read "in conjunction" with the Executive Life Plan.  Based upon

this analysis, Defendants concluded that they could terminate the life insurance benefit at will.  In this letter, Defendant Supervalu acknowledged that it had accepted Defendant Unified's contractual obligations as a result of the merger.  [Admin. Rec. 57-59]

As shown by the Delano Retirement Contact, Unified obtained the agreement of Harley to retire early without continued payment of his entitled salary in return for certain benefits.  At issue in this case, the Delano Retirement Contact specifically provided that Unified would deliver a life insurance policy in a sum of one and one-half of Harley's final compensation and pay the policy premiums, and in return Harley agreed to retire early.  [Admin. Rec. 3]  The complaint's allegations involving the Third Claim all emphasize that this was a separate agreement reached between Harley and Unified (and Supervalu as Unified's successor-in-interest) regarding Harley's early termination from employment, that Harley has a present ownership interest in the life insurance policy at issue, and that these terms were particular to Harley and did not involve any other employee of either Defendants.  Complaint, ¶¶6, 7(B), 11, 12, 21, 47.  Most importantly, the words of the letter comprising the Delano Retirement Contact specifically state that such Contract "comprises the entire agreement and supersedes and prior conditions of employment" for Harley.  Complaint, ¶8.

Additionally, the Complaint refers to a split dollar universal life insurance policy (the "Policy") that was purchased prior to the Delano Retirement Contact, and that Harley owned the right to name a beneficiary and decide methods of settling claims as to the policy.  Complaint, ¶11.  It is Harley's position that the reference to such life insurance policy was merely the identification of the policy that Defendants would use to fulfill the obligation under the Delano Retirement Contact.  Moreover, the allegations establish that Harley paid income tax on the Policy's premiums after his retirement.  Complaint, ¶13.  Finally, the Complaint alleges that Defendants terminated

the premium payments and allowed the life insurance policy to lapse through no fault of Harley and in contravention of Harley's ownership rights.   Complaint, ¶30.   All such allegations are incorporated into the Third Claim for financial elder abuse.

Here the Administrative Record establishes that Harley, as an employee of Defendant Unified Western Grocers, Inc., entered into the Executive Life Plan with Defendants in 2000 and prior to his decision to retire.   Defendant Unified funded the life insurance benefit with a split dollar life insurance policy that, pursuant to the terms of that plan, provided ownership interests in the policy to both Defendants **and Harley.** [Admin Record 23 – 29].

Thereafter, conditions for continued employment changed and Harley and Defendants negotiated a second agreement, wherein Harley agreed to terminate his employment and salary and existing benefits for new promises of certain benefits by Defendant Unified.   One of the new benefits that was promised by Defendant Unified to Harley was to make life insurance "available". [Admin Record 3].   Defendant Unified elected to provide those life insurance benefits by the split dollar life insurance policy that already existed under the Executive Life Plan.   There are two points to be made regarding Defendant Unified's decision to do so – first, Harley did not qualify for those benefits since he would not be an active employee and therefore he did not meet the conditions of a retired employee for the life insurance under the terms of that Plan, and 2) there is nothing in the Delano Retirement Contact that required Defendant Unified to use the existing split dollar life insurance policy to fulfill its obligation.   It was Defendant Unified's unilateral election to use the existing split dollar life insurance policy previously obtained under the Executive Life Plan to fund the new promise to make life insurance available, which Defendant Unified did by waiving the terms and conditions of the Executive Life Plan.   Thereafter, Defendant SUPERVALU

gained control over the operations and actions of Defendant Unified Western Grocers, Inc. through a statutory merger, and thereafter the two Defendants acted in accordance with that relationship.

However, shortly after Defendant Unified Grocers, Inc. became a subsidiary of Defendant Supervalu through the merger, the Defendants acted to terminate the Executive Life Plan.  Along with their decision to terminate the Executive Life Plan for all participants, the Defendants also decided to terminate the split dollar life insurance policy that Harley had received some 16 years earlier pursuant to the Delano Retirement Contact.  Harley appealed the Defendants' decision pursuant to his ERISA rights; but the Defendants denied the appeal and a written "Final" Denial was given to Harley on April 9, 2018 ("Final Denial").  (Admin Record Doc #57-59).  Harley, having exhausted all available administrative remedies, filed this suit thereafter.

Defendants set forth their grounds for the Final Denial therein on the following grounds: (1) the "2001 Letter Did Not Create a New ERISA Benefit", and, (2) that there existed a "Right To Terminate Delano's Benefit", and that, (3) there was no "Contractual Obligation to Maintain the Policy."  [Admin. Rec. 57-59]

## VI.   ISSUES PRESENTED

The Issues presented on this motion for judgment include the following, and any additional issues that may arise as a consequence of the findings of the Court on the issues, all of which are often interrelated.

1.    IS THE DELANO RETIREMENT CONTRACT OF ITSELF AN ERISA PLAN?

2.    IF THE DELANO RETIREMENT CONTRACT IS, OF ITSELF, AN ERISA PLAN, DOES THE COURT INTERPRET AND CONSTRUE THE DELANO RETIREMENT CONTRACT TO ALLOW DEFENDANTS TO UNILATERALLY TERMINATE THE CONTRACT AND ITS INSURANCE BENEFITS?

3.     IF THE COURT DOES FIND THE DELANO RETIREMENT CONTRACT IS AN ERISA PLAN, BUT DOES NOT INTERPRET AND CONSTRUE THE DELANO RETIREMENT CONTRACT TO ALLOW DEFENDANTS TO UNILATERALLY TERMINATE THAT CONTRACT AND THE INSURANCE BENEFITS IT PROVIDED TO HARLEY, DID DEFENDANTS BREACH THE DELANO RETIREMENT CONTRACT WHEN THEY TERMINATED HARLEY'S INSURANCE POLICY AND BENEFITS THEREUNDER?

4.     IF THE COURT DOES FIND THE DELANO RETIREMENT CONTRACT IS AN ERISA PLAN, AND FINDS THAT DEFENDANTS BREACHED SAME, WHAT RELIEF SHOULD BE ADJUDGED TO HARLEY AS A CONSEQUENCE OF SUCH BREACH?

5.     IF THE COURT DOES FIND THAT THE DELANO RETIREMENT CONTRACT IS AN ERISA PLAN, ARE HARLEY'S THIRD CAUSE OF ACTION FOR CALIFORNIA STATE LAW ELDER ABUSE AND FOURTH CAUSE OF ACTION FOR STRAIGHT BREACH OF CONTRACT PREEMPTED BY ERISA?

6.     ALTERNATIVELY: IF THE COURT FINDS THAT THE DELANO RETIREMENT CONTRACT IS NOT AN ERISA PLAN WITH RIGHT OF ACTION UNDER HARLEY'S FIRST AND SECOND CAUSES OF ACTION, BUT FINDS THAT IT IS A BINDING CONTRACT EITHER WITH OR WITHOUT RIGHT TO TERMINATE BY DEFENDANTS, SHOULD THE COURT PROCEED IN SUPPLEMENTAL JURISDICTION BY ADJUDICATING HARLEY'S THIRD AND FOURTH CAUSES OF ACTION FOR FINANCIAL ELDER ABUSE AND STRAIGHT BREACH OF CONTRACT?

## VII.   ARGUMENT

1.   The Court must interpret and construe the Delano Retirement Contact to determine whether it is an ERISA Plan.

(A)   The Delano Retirement Contract is, of itself, an entire contract separate from the Executive Life Plan.  In this case Harley pled the Delano Retirement Contract as a separate ERISA contract in his first two causes of action (the "ERISA Actions").  A review of the Delano Retirement Contract does refer to the pre-existing Executive Life Plan, an admitted ERISA Plan, of which Harley was a participant.  However, the predominate question for this Court is whether the Delano Retirement Contract is an ERISA contract and, if so, whether it is an amendment to, or otherwise incorporates, the Executive Life Plan.  This question was answered in the negative in the case of *Miller v. Rite Aid Corp*. (9th Cir. 2007) 504 F.3d 1102, 1106, where the Ninth Circuit held that when a company offered a life insurance policy to an employee who was not eligible for the ERISA group life coverage, the offer of the life insurance policy, as well as the policy itself, did not constitute an ERISA plan.  Just as in the *Miller* case, Harley contends that the Delano Retirement Contract is not part of the Executive Life Plan simply because the Executive Life Plan is mentioned in the Delano Retirement Contract.

Defendants staked their entire decision in terminating Harley's life insurance policy on Defendants' interpretation that the two documents -- the Delano Retirement Contract and the Executive Life Plan -- must be read in "conjunction" together.  In doing so, Defendants concluded that the express right to terminate, set forth in Section 6(a) in the Executive Life Plan, governed the benefits set forth in the Delano Retirement Contract.

As discussed in Section IV above, that interpretation and construction of the documents by the administrator is to be given no deference or weight by this Court.  In the first instance, no

---

document reserves any discretion to the administrator to interpret the terms and conditions of the Plan. Rather, the Court alone, in *de novo* review, is to interpret the terms and conditions of the plan:

> "…as they do with contractual provisions without deferring to either parties interpretation, making a particular point that it is done without rules or the interpretations of the trustee or his attorneys." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989) Quoted in *Kearney, supra* at 1089.

Based upon the very face of the two contracts themselves, Defendants' interpretation cannot be sustained. The Delano Retirement Contract, executed over a year after the Executive Life Plan, under very different circumstances, not at commencement of employment, but on the eve of Harley ceasing his employment, explicitly provides to the contrary as follows:

> "This letter comprises the entire agreement and supersedes any prior conditions of employment, including those outlined in my letter of July 20, 2001." (Admin Record Doc #3)

The Executive Life Plan also explicitly provides at Sections 9 and 12 that it is an entire agreement and could only be modified a writing signed by all parties. (Admin Rec. 28] In this respect the Delano Retirement Contract cannot be considered a modification of the Executive Life Plan in any fashion consistent with its terms because the Delano Retirement Contract states it is the "entire" agreement, and that it "supersedes" all prior conditions of employment, including those outlined in a letter July 20, 2001.

No party appears to have located the July 20, 2001 letter, but Defendants did produce a draft copy thereof. [Admin Rec. 293-294]. An examination thereof discloses that it is remarkably similar in the text in the Delano Retirement Contract referring to life insurance benefits. One could reliably infer that the language describing Harley's benefits in the July 20, 2001 letter was 'cut and pasted" into the Delano Retirement Contract. Thus, it cannot be said that Defendants were inattentive and not referring to the very Executive Life Plan that they then agreed was superseded.

---

Similarly it approaches pure sophistry to assert that the terms and conditions of an explicitly agreed "superseded" plan has nevertheless been "modified"; or that its terms must be incorporated into, or read in "conjunction" with a contract that explicitly states it is the "entire" agreement.

Therefore, the anticipated argument of the Defendants that the mere mention of the Executive Life Plan in the Delano Retirement Contract will be of no help to the Defendants.  First, the Delano Retirement Contract only states that Harley was "already enrolled in this plan . . ." [Admin. Rec. 3]   There is no language stating that the terms of the Executive Life Plan is incorporated into the Delano Retirement Contract.  Therefore, the plain language of the Delano Retirement Contract controls.  Second, as stated above, the Delano Retirement Contract is exclusive as the "entire agreement" between the parties with respect to the life insurance policy.

The contractual argument advanced by the Defendants was previously and decisively rejected by the courts.  In *Alday v. Raytheon Co*.,693 F.3d 772, 786-790 (9th Cir. 2012), Defendant Raytheon made precisely the same argument that extensive, voluminous, and multiple references to an ERISA medical benefits plan in a Collective Bargaining Agreement (CBA) promising cost free medical benefits were "subordinated" to the ERISA welfare plan provisions that allowed Raytheon to modify or terminate those benefits.  Use of the term "subordinated" there by Raytheon was an obvious euphemism for the legal principle of incorporation by reference.  The Ninth Circuit rejected all of these arguments by holding:

> "But none of these provisions allows the employer unilaterally to override express terms in the bilateral CBA, governing who is to pay for coverages, whether by unilaterally writing conflicting language into the Plans referenced in the CBAs or otherwise."  *Alday* at 790.  (emphasis added).

Here, the references in the separate Delano Retirement Contract are far less detailed and extensive than in *Alday*. Emphasizing that any separate contract is to be construed according to its terms, the Court in *Alday* further found, after review of the requirements of an ERISA plan, that the CBA was itself a separate stand-alone ERISA plan in and of itself; and that a breach thereof was not only a breach of the CBA, but a breach of the ERISA plan that the CBA was also, even though both contracts involved the same benefits. *Alday* at 782-783 Ft. 7.

The significance of that latter holding goes further in this case in that *Alday* makes no contractual distinction between separate CBA that is also an ERISA plan, and a separate contract that is not an ERISA Plan. *See also, Graham v. Balcor Company*, *infra*, 146 F.3d 1052 (9th Cir. 1998) (separate contract not an ERISA plan.) Both are contracts. Mere reference in a separate contract of another contract that is an ERISA plan does not thereby import that ERISA plan into the separate contract. Harley asserts and has pled that the Delano Retirement Contract is a separate contract in and of itself.

Even an argument by the Defendants that the quoted language from the Delano Retirement Contract <u>might</u> be construed to incorporate the Executive Life Plan, is, at best, an argument that the terms of the Delano Retirement Contract are ambiguous, especially in light of the "entire agreement" language of the Delano Retirement Contract. Raising the question of ambiguity does not help the Defendants. Rather, as discussed in *Blankenship v. Liberty Life Assur. Co. of Boston* (9th Cir. 2007) 486 F.3d 620, 625, the doctrine of c*ontra proferentem,* which is recognized by federal common law and the law of every state and the District of Columbia, results in any ambiguity being held against the Defendants, who drafted the Contract. For example, *see Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 538–40 (9th Cir.1990), which holds that even in ERISA cases if, after applying the normal principles of contractual construction, the contract for

insurance is fairly susceptible of two different interpretations, the interpretation that is most favorable to the insured will be adopted.  Thus, under the rules of contract interpretation and the doctrine of *contra proferentem*, it is either the understanding of Harley, or a construction that is most favorable to Harley, that would control.

In the end, it is obvious that Defendants' decision to terminate Harley's life insurance policy, and the Defendants' denial of Harley's appeal, was made solely on the basis that because the Executive Life Plan was merely mentioned in the Delano Retirement Contract, the right to terminate contained in the Executive Life Plan was somehow incorporated into the Delano Retirement Contract.  Such forced construction cannot stand.

(B)   Is the Delano Retirement Contract an ERISA Plan?

This determination is to be made by the Court upon scrutiny of the document and the requirements of ERISA.

Here, to be such, the ERISA plan must be an employee welfare benefit plan under ERISA. In *Cinelli v. Security Pac. Corp.*, 61 F.3d 1437, 1441-1442 (9th Cir. 1995) the court held that an ERISA plan requires the following:

(i)   It must be written.

(ii)   Must provide a policy and method of funding.

(iii)   Must describe a procedure for plan operation and Administration.

(iv)   Must provide a procedure for Amending the Plan.

(v)   Must specify a basis for payments to or from the plan.

In *Alday*, *supra* at 782 fn 7, this Court mentioned only items (ii) and (iv) above, possibly deeming the existence of the rest of the requirements adequately provided in the separate ERISA

Plan involved in that case as providing any additional requirements.  Such a construction should be applied in this case also.

However not every contract wherein an employer agrees to provide welfare benefits to an employee or former or retired employee is a plan subject to ERISA.  In *Graham v. The Balcor Company*, 146 F.3d 1052 (9th Cir. 1998), a case very much concerned with ERISA's preemption provisions, the Court reviewed a separate agreement.  The employee in that case had incurred a disability, and in a dispute over termination of employment, entered into a settlement agreement whereby the employer agreed to continue her employee's benefits under an ERISA Plan.  But five years later the Company terminated her disability benefits.  The District Court had ruled that the separate agreement modified an ERISA plan, and entered its order that the employee be reinstated in the Plan.

The Ninth Circuit affirmed the District Court's judgment, but on different grounds.  In *Balcor*, the Court found that a separate contract existed and upheld its validity as a binding contract.  In addressing preemption however, the Court held the separate agreement was <u>not</u> an "employee benefit plan" subject to ERISA.  This was so because the separate agreement concerned "only one employee" not the administration of the plan itself.  The court further noted that Congress pre-empted only state laws relating to ERISA plans, not employee benefits.  Citing *Fort Halifax Packing Co. v Coyne*, 482 U. S. 1 (1987), the Court discussed that the Congressional objective was to standardize regulatory requirements applicable to plan administrators in order to encourage the formation of employee benefit plans.  *Pilot Life Ins. Co. v. Dedeaux*, 481 U. S. 41, 54, (1987).  Accordingly, the Balcor court held that since the separate contract was not an ERISA plan, ERISA's preemption provisions did not apply.

Another case holding that the offer of a life insurance policy to an employee did not create an ERISA plan is *Miller v. Rite-Aid Corp.*, 504 F.3d 1102 (2007).  In that case, as part of her employment, Rite-Aid promised Ms. Miller that she would be provided with life insurance.  Rite-Aid adopted a group policy insurance plan for its employees, which covered Ms. Miller during her employment.   However, Ms. Miller was diagnosed with terminal cancer and was placed on disability until her death one year later.  Despite her illness, Rite-Aid assured her that she would continue to have life insurance through the time of her death.  But during her illness, Rite-Aid changed insurance companies and did not list Ms. Miller on the list of employees exempt from the plan's "active at work" requirement.  When Ms. Miller passed away, her beneficiaries were denied the benefits of the life insurance policy.  The Ninth Circuit held that the promise of insurance was a contract independent from the ERISA group life insurance plan, and that her beneficiaries' claims were not preempted by ERISA.

This case, that is strikingly similar to *Balcor* and *Miller* in its facts, could be construed the same -- that the Delano Retirement Contact is not an ERISA plan.  It involves only one employee whose employment rights are terminated in a bargained for exchange of salary and benefits, particularized to that employee only within a few months after the same were first established.  The agreement itself confirms that it applies only "In your case…".   [Admin Rec. 3].  The administration of the Executive Life Plan is entirely unaffected by the separate Delano Retirement Contact, which serves as a funding source only for a benefit separately bargained for and accepted by the parties on termination of employment in the very same fashion as the Employer did in Balcor and Alday.

Indeed, the lack of impact on the administration of the Executive Life Plan was made a non- issue when the Employer itself waived the plan conditions in order to obtain the benefits of a

separately bargained for termination of Harley's employment and salary expenses. The Executive

Life Plan went on and served its purpose as a funding source under the separate agreement for

some 16 years with no impact or interference whatever in the administration thereof.

2.     The Delano Retirement contract, and the life insurance benefits it provides, may

not be terminated unilaterally by Defendants.

De novo interpretation and construction of the Delano retirement Contract, whether it is an

ERISA plan or not, are to be undertaken according to general contractual principles.  *Firestone*

*Tire and Rubber Co. v Bruch,* 489 U. S. 101, 112 (1989).  There are no "magic words" and there

need not be any particular form nor need to be in an official plan document.  *Abatie v. Alta Health*

*Life ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006); *Alday v. Raytheon Co.,* 693 F.3d 772, 782 (2012).

However, if the Delano Retirement Contract is an ERISA plan, there may be a difference

in the process of interpretation and construction.  That is so because an ERISA welfare benefit

Plan may generally be terminated by the employer at any time, unless the employer "contractually

cedes its freedom" to do so.  *Alday*, *supra* at 781-782 citing *Inter-Modal Rail Emps. Ass'n v.*

*Atchinson Topeka & Santa Fe Ry. Co*., 520 U.S. 510, 515 (1997).

Harley clearly asserts that Defendants did contractually agree to relinquish any right to

terminate the insurance benefits and ceded their freedom to do so in the Delano Retirement

Contract.  In this respect the rule of strict construction applies, and the scrutiny of the court must

go to the document itself.  *Cinelli v. Security Pac. Corp* at 1442; citing *Watkins v. Westinghouse*

*Hanford Co.*, 12 F.3d 1517 (9th Cir. 1993).

The Delano Retirement Contract must be read for what it specifically provides that

Defendants are obligated to perform by way of their contractual duty. Those words are:

"In your case, the Company will waive this requirement of 5 years of service
and make the life insurance available to you on January 2, 2002." (emphasis added.)

Defendants, by these words did not actually grant or confer anything, but agreed to make life insurance, (and not the Executive Life Plan itself) "available". In so doing, it was then Harley's right to take, not take, maintain or terminate the insurance at any time. Harley did take and maintain the insurance and never terminated it.

In so agreeing, Defendants sole contractual duty in this regard was to make life insurance "available". In construing the contractual rights of the parties, the question is not whether Defendants had a right to terminate, but rather whether they ceded the right to take, maintain, or terminate the insurance to Harley.

Here they certainly did so. That is what the contract provides. In terminating the insurance, the Defendants breached their promise to make it available.

The interpretation of the Delano Retirement Contract cannot include a right to terminate by Defendants for the obvious reason that a contract that explicitly supersedes a contract with an explicit right to terminate cannot then be reasonably construed to include that very right to terminate by any other means of interpretation and construction. To do so would be to ignore what the parties explicitly agreed was superseded.

In construing the Delano retirement contract, a promise to make the insurance available, contains no limitations, and by its very nature "life" insurance is for life, unless it is terminated. Here the right to terminate the insurance belonged to Harley Delano, not Defendants. A promise to make insurance available cannot possibly be reconciled with a concurrent right to not make it available as the Defendants now claim. This is particularly so when Defendants' claim of right to do so arises solely from a "superseded" agreement that lies outside the scope of the "entire" agreement Defendants drafted and entered into.

3.      Defendants breached the Delano Retirement Contract.

It is undisputed that the Defendants terminated and cancelled the life insurance benefit that Defendants promised to make it available almost 19 years earlier, and that Harley exercised his right to take until his death, and without any termination rights.  Defendants promised Harley to make it available and he took it and never terminated it.  When Defendants unilaterally terminated that insurance and made it unavailable over Harley's vehement protests and appeals, Defendants wrongfully breached the Delano Retirement Contract.

4.      The Court should order defendants to reinstate Harley's life insurance policy, paid up to date, or to provide a life insurance policy of equal quality and financial worth without cost and expense, including any adverse tax cost or expense, to Harley.

In order for Harley to receive the benefit of his bargain, the Defendants should be required to purchase a fully paid-up life insurance policy on Harley's life for the stated death benefit of $287,135.  If Defendants are unable to reinstate or replace such insurance, then money damages should be awarded to Harley.  The target death benefit to Harley at the time they terminated it was the sum $287,135.00 [Admin. Rec. 31, 212), and that sum should be increased by ten percent interest per annum since December 31, 2017 to date of entry of judgment; with a sum calculated at the highest federal and State of California income tax rates on the principal amount of damages awarded, plus costs and reasonable attorneys' fees per application therefor in accordance with law.

Alternatively, the Court should award Harley the value of his salary that he surrendered in exchange for the promise of receiving the life insurance because, if the Defendants' interpretation is correct, the Delano Retirement Contract was illusory.  The Ninth Circuit held in *Flores v. American Seafoods Co.,* 335 F.3d 904, 912 (9th Cir. 2003), that an illusory promise is one containing words "in promissory form that promise nothing" and which "do not purport to put any

limitation on the freedom of the alleged promisor." If Defendants' interpretation could terminate Harley's life insurance policy at will without any compensation to Harley, then the "promise" to provide Harley with the life insurance in exchange for his bargaining away 8 months of salary, then the Defendants' "promise" is a textbook example of an illusory promise.

Harley's annual salary at that time was $175,000 [Admin. Rec. 293], which is equivalent to a monthly salary of $14,583.33. Since he was going to retire in September, 2002, by retiring early Harley exchanged his salary for 8 months, equal to $116,667, for the life insurance benefits. This sum should then be increased by prejudgment interest from September 1, 2002 to the date of the award by the legal rate of interest permitted under the law.

5. Harley's Third and Fourth Causes of action are not pre-empted even if there is a finding that the Delano Retirement Contract is an ERISA Plan.

If the Delano Retirement Contract is an ERISA plan in and of itself, the Fourth Cause of Action for Breach of contract may initially and upon superficial consideration appear to be pre-empted by ERISA Section 514(a). 29 U.S.C. Section 1144(a). Section 514(a) preemption is often referred to as "express preemption." After all, Harley's First and Second causes of action are claims for denial of benefits under the Delano Retirement Contract. Section 514(a) is expansive and preempts, by its terms, state law claims that "relate" to an ERISA plan. The indefinite scope of the word "relate" in this statute however was addressed and limited by the Supreme Court in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 657, (1995). In *Travelers* the Supreme Court delineated the intention of Congress to not supplant state laws by this preemption, but to give state law the fullest effect possible. *Travelers, id.,* at 653. Instead, the Supreme Court adopted a functional approach, setting the limits of 514(a) preemption at the Congressional intent of establishing a uniform body of benefits law; to minimize

burdens of conflicting directives amongst states and to prevent the development of conflicting law requiring plans to the peculiarities of law of multiple jurisdictions. *See Travelers* at 657-657.

The end result is that if the Delano Retirement Contract is determined to be a separate ERISA plan, there is no contractual right to terminate the Contract and the Defendants' actions in doing so were wrongful.  The end result is that there would be no difference in interpretation if it were a separate, non-ERISA contract.  *See Miller v. Rite-Aid Corp., supra.*

Harley's Third cause of action, however, is an entirely different matter because it is not  an action in contract, nor is it a disguised and relabeled action for "tortious breach of contract" mentioned and proscribed in *Aetna Health Inc. v. Davila,* 542 U.S. 200, 228 (2004), (citing cases wherein state law contract claims were relabeled torts: *Allis Chalmers Corp v. Lueck* 471 U. S. 202, 211 (1985)-bad faith handling of insurance claim; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58-65 (1987)-mental anguish; *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143-145 (1990)-punitive damages and mental anguish) the Third Cause of Action is an action in Tort.

The wrongful taking of Harley's property can in no way be explained away by Defendants as disguised contract claims.  The Third Cause of Action is an action in Tort.  The remedy sought is payment of damages by Defendants for the wrongful taking of Harley's existing property rights that he already possessed under Cal. Wel. & Ins. C. §15675(a).

Harley's Third Cause of Action does not seek to vindicate any rights that "relate" to an ERISA plan under Section 514(a) as embodied in 29 U.S.C. Section 1144(a) (express preemption); nor does Harley in the Third Cause of Action seek to recover benefits due him under the terms of any ERISA plan or to enforce rights thereunder, or clarify rights to future benefits under such a plan as set forth in section 502(a) of ERISA. (conflict preemption)  29 U.S.C 1132(a).

The enforcement scheme of ERISA and the preemption effect set forth in Section 1144(a) only applies to state laws and actions that "relate" to any employee benefit "plan". Conflict preemption is inapplicable to the Third Cause of Action, both (i) because it does not "duplicate, supplement or supplant" any ERISA remedy under section 514(a) (*Pilot Life Ins. Co. v. Dedeaux*, 481 U. S. 41, 54-56. (1987); *Ingersol-Rand Co. v .McClendon*, 133, 143-145 (1990); *Aetna Health Inc. v. Davila*, 542 U. S. 200, 228-230 (2004), and (ii) because there exists an entirely independent, and unrelated state law duty of Defendants to refrain from taking the property of an elder. In that respect "elders" are a class of vulnerable persons deemed in need of protection in financial matters against wrongful taking of their money and property.

Even if Harley brought a claim under ERISA, when, as here, there is an independent unrelated state duty that is implicated by Defendant's actions, the breach of which is not a disguised contract (plan) action, ERISA Section 502(a)(1)(B) does not preempt that state law action. The Court in *Davila, supra*, in respect of the limits of ERISA preemption, recognized that such situations could arise when it stated the integrated rule for both of express preemption in Sections 502(a) and conflict preemption in Section 502(a)(1)(B) as follows:

> "In other words, if an individual, at some point in time, could have brought his claim under ERISA Section 502(a)(1)(B), and where there is no other Independent legal duty that is implicated by a Defendant's actions, then the individual's cause of Action is completely preempted by ERISA Section 502(a)(1)(B)." *Davila* at 219.

The Davila precedent requires more. The provisions of ERISA Section 502(a)(1)(B) extends to such duplicative claims only if no other "independent legal duty" is implicated by Defendants' actions. *Davila* at 210. To determine whether any other independent legal duty is alleged, the Court must examine the complaint, the statute upon which it is based and the plan documents. *Davila* at 221.

Here no plan document, even if such exists as an ERISA plan, even remotely addresses the taking of a beneficiary's property rights which is the gravamen of the financial elder abuse action. The state law statutes, including California Welf. & Inst. C. §§15610(c), 15610.70, and 15610.30 provide a right of action for such a wrongful taking, and the complaint sets forth the essential allegations of such a claim.  Accordingly, the state law claim of Financial Elder Abuse lies outside the preemptive scope of ERISA.

6.      The Court should in all events proceed to adjudicate Harley's Third and Fourth Causes of Action.

While it is not Harley's purpose or intention on this motion to prosecute Harley's state law claims, particularly the Third Cause of action for Financial Elder Abuse, it is reasonable to conclude that this cause of action must be considered.

In the event that the Court finds that the Delano Retirement Contract is not an ERISA plan, the primary federal jurisdiction set forth in the First and Second Causes of Action of Harley's complaint will not exist; and the Court may likely then dismiss those causes of action.

In doing so, the Court will likely consider, by reason of its supplemental jurisdiction under 28 U.S.C. 1367(a), whether to retain and adjudicate Harley's Third And Fourth Cause of Action for Financial Elder Abuse And Breach of Contract under California state law; or whether to dismiss same without prejudice leaving Harley's recourse to state court proceedings.  It is recognized the District Court may decline to do so under 28 U.S.C. 1367(c)(2) and (3).

The origins of the rationale and rule of Sections 1367(c)(2) and (3) lie in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) and more recently in *Acri v. Varian Assoc., Inc*., 114 F.3d 999 (9th Cir. 1997), wherein the court held the decision to relinquish supplemental

jurisdiction must be "informed by the *Gibbs* values of economy convenience, fairness, and comity." *Acri* at 1001.

In the *Acri* case, the Ninth Circuit set the ground work quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 350, n.7 (1988):

> "…in the *usual case* in which all federal-law claims are eliminated before trial, the balance of factors…will point towards declining jurisdiction over the remaining state law claims." *Carnegie-Mellon* at 350.(emphasis added)

Thus *Acri* made the point that the inclination to declining supplemental jurisdiction is only valid in the "usual" case; and that the admonition is not meant to be mandatory. That is, the *Acri* court stated in the "usual case" such declination of jurisdiction "should" occur, but that the *Gibbs* case "has never meant that the state law claims "must" be dismissed back to state jurisdiction. *Acri* at 1000. Thus the *Gibbs* wisdom of deciding all the issues on grounds of a "common nucleus" of operative fact and "values of economy, convenience, fairness and comity and the expectation that all the intertwined issues should be decided in a single proceeding should always be considered and most certainly do fairly apply here.

This Court should not transfer this case to state court because this is not the usual case. The Federal ERISA statute has suffused this entire proceeding and all the issues. Certainly ERISA, in all its complexity, can be expected with a high degree of probability to be raised by Defendants again defensively, if the state law claims are returned to state jurisdiction.

If this case is transferred to state court, Harley will be forced to laboriously, and with uncertain results, again sort out the ERISA rights, duties and obligations in a state court, particularly those that specially relate to construction and interpretation of contracts. The state court will have scant familiarity in dealing with this very complex federal statute, and its finely tuned federal policy distinctions and objectives that are federal, not state, law. This will occur

after the heavy lifting of the legal work has already been done by the parties in this Court on the issues of whether an ERISA plan exists, and the special processes of interpretation and construction of the contracts in an ERISA case that will determine whether there exists a right to terminate the benefit.  That entire effort will have to be duplicated again in a state court if transferred.

Most obviously, these difficulties will be compounded when it is understood that the Financial Elder Abuse claim does not depend on whether the Delano Retirement Contract may be terminated at will by Defendants.  Even if Defendants are found by this Court to have a right to terminate the welfare benefit contractually, that determination would not be dispositive in the Financial Elder Abuse action.  The Financial Elder Abuse claim and law examines into whether a "taking" is by an "agreement," whatever its terms, (or any other means), and has been used to financially abuse an elder.  *See* Wel. & Ins. C §15610(c).

That is, agreements that are otherwise legal and adequate under the law are often and commonly used as instrumentalities of Financial Elder Abuse.  A simple and common example are real estate contracts used to "purchase" real properties from elders at inadequate prices that are at wide variance from the true value thereof.  *See eg. Bounds v. KMA Group et al,* 229 Cal.App. 4th 468 (2014).  Such "agreements" are not set aside in an elder abuse action, but the use of an abusive agreement is a tort compensable by damages when such taking by an agreement of an elder's property rights is factually found by court or jury to have been "for a wrongful purpose or to defraud"; and the Defendant "knew or should have known" the action would be harmful to the elder.  (*See* Wel. & Ins. C §§15657.5(a), 15610.30(b), 15610(c), and 15610.70).

This Court, having essentially tried all the complex legal issues of ERISA and construction of the contracts on the motion for judgment on the administrative record, under *Gibbs,* should not

abandon Harley to the state courts and the inevitable the burdens of its lack of economy, convenience, fairness and comity.  There Harley would be forced start again  not just from scratch in an elder abuse case, but will have to also duplicate and repeat all the ERISA work again to avoid that complex federal law from obscuring the rights of the parties in the elder abuse action.  In retaining supplemental jurisdiction, this federal court will have already resolved the issues of what the contract is, the inapplicability of ERISA considerations, and submit for trial the basic, and quintessential and straightforward fact questions of whether Defendants' have:

(1) taken Harley's property rights by an *agreement*, or other means,

(2) for a wrongful use or within intent to defraud,

(3) knowing or should have been knowing that would be harmful to this elderly plaintiff.

## VIII.   CONCLUSIONS

Based upon the facts and law discussed above, the Court must find that:

1.     The Delano Retirement Contract does not incorporate the terms of the Executive Life Plan into it, nor does it amend or modify the Executive Life Plan.  Instead, the Court must find that the Delano Retirement Contract is an independent ERISA Plan unto itself.

2.     As an independent ERISA plan, the Delano Retirement Contract did not allow the Defendants to unilaterally terminate the Contract and its insurance benefits.

3.     That the Defendants breached the Delano Retirement Plan when they wrongfully terminated that Plan and Harley's insurance benefits thereunder.  Accordingly, the Defendants should either be mandated and ordered to purchase a fully paid-up life insurance policy on Harley's life for the stated death benefit of $287,135 or, if Defendants are unable to reinstate or replace such insurance, then money damages should be awarded to Harley equal to the stated death benefit.

4.      Alternatively Harley should be awarded damages equal to $116,667 for the amount of his salary that was foregone in exchange for the life insurance benefits, and this sum should then be increased by prejudgment interest from September 1, 2002 to the date of the award by the legal rate of interest permitted under the law.

5.      If the Court does find that the Delano Retirement Contract is an ERISA plan, the Court should find that Harley's third cause of action for California state law elder abuse and fourth cause of action for straight breach of contract are not preempted by ERISA.

6.      Alternatively: if the Court finds that the Delano Retirement Contract is not an ERISA plan with a right of action under the first and second causes of action, but finds that it is a binding contract, the Court should apply supplemental jurisdiction to adjudicate Harley's third and fourth causes of action for financial elder abuse and straight breach of contract.

Respectfully Submitted:


/s/ Spencer T. Malysiak
SPENCER T. MALYSIAK
Spencer T. Malysiak Law Corporation
3500 Douglas Blvd., Suite 200
Roseville, California   95661
Telephone:  (916) 788-1020
Facsimile:  (916) 788-0404
Email: spencer@malysiaklaw.com

Attorney for Plaintiff Harley Delano